**Exhibit A**

## PROPERTY SETTLEMENT AGREEMENT

*01 - 616 Fc*

**AGREEMENT OF SEPARATION** made in the Town of Greenwich, County of Fairfield, State of Connecticut as of January *13*, 1997 by and between Ronald Greschner residing at 163 John Street, Greenwich, Connecticut 06830, (hereinafter referred to as the "Husband") and Carol Alt residing at 163 John Street, Greenwich, Connecticut 06830 (hereinafter referred to as the "Wife").

## W I T N E S S E T H:

**WHEREAS**, the parties hereto were duly married by a clergyman in the Town of East Williston, County of Nassau and State of New York on November 21, 1983; and

**WHEREAS**, there are no issue of said marriage; and

**WHEREAS**, certain unhappy and irreconcilable difference have arisen between the parties as a result of which Husband and Wife have separated and are now living separate and apart from each other; and

**WHEREAS**, it is the intention of the parties to continue to so live separate and apart from each other, and it is their desire to enter into an agreement, under which their respective financial, property rights, custody and visitation and all other respective rights, remedies, privileges and obligations to each other arising out of the marriage relations, or otherwise, shall be fully prescribed and bounded thereby; and

**WHEREAS**, the parties hereto have each made independent inquiry and investigation with respect to their respective legal rights, remedies, privileges, and obligations arising out of the marriage relation, or otherwise; and

**WHEREAS**, the parties hereto each warrant and represent to the other that they, and each of them, fully understand all of the terms, covenants, conditions, provisions and obligations incumbent upon each of them by virtue of this agreement be performed or contemplated by each of them hereunder, and each believes the same to be fair, just and reasonable and to their respective individual best interests; and

**WHEREAS**, the parties intend that this property settlement agreement, which is entered into after due deliberation shall settle the rights of the parties with respect to any and all funds or properties, both real and personal, wherever situated, now or ever owned by the parties, or either of them, or standing in their respective names or which may hereafter be acquired by either of the parties with respect to any and all other rights, claims or demands growing out of the marriage relationship or otherwise; and

**WHEREAS**, each of the parties desires that this Agreement be incorporated, but not merged, in any judgment of divorce that may hereafter be entered between them; and

**NOW, THEREFORE**, in consideration of the premises and of the covenants and promises contained herein, the parties hereto agree as follows:

2

## ARTICLE I

## NON-MOLESTATION
## AND CONFIDENTIALITY

A.    The parties shall hereafter continue to live separate and apart, free from interference, authority and control of the other, direct or indirect, as fully as if each were unmarried.  Each of the parties may reside at such place or places as he or she may select.  Each of the parties may, for his or her own separate use and benefit, engage in, conduct and carry on any employment, business or profession which he or she may deem advisable; neither of the parties shall interfere with the rights, privacy, privileges or actions of the other; and each of the parties shall be at liberty to act and do as he or she sees fit, subject only to the limitations expressly set forth in this Agreement.  Neither of the parties shall compel or attempt to compel the other to cohabit with him or her by any means whatsoever.

B.    Except in response to and as required by legal subpoena or court order, neither of the parties shall violate the privilege of the other to keep all communications between them during their marriage confidential, nor disclose any of the information contained in any financial data furnished by one to the other, nor reveal any of the terms and provisions of this Agreement to any persons other than their respective attorneys or accountants to the extent that the advice or assistance of either of the foregoing shall be necessary in order for the Parties to effectuate the terms and conditions of this Agreement.

3

ARTICLE II

SEPARATE OWNERSHIP

A.    Except as otherwise expressly set forth herein, each of the parties shall own, free of any claim or right of the other, all of the items of property, real and personal, tangible and intangible, of every kind, nature and description and wheresoever situate, which are now in his or her name, control or possession, with full power to him or to her to dispose of the same as fully and effectually in all respects and for all purposes as if unmarried.

B.    Except as otherwise expressly set forth herein, all property acquired by either of the parties pursuant to this Agreement, or acquired since their separation, or that may be acquired by either of the parties in the future, by gift, devise, bequest, distribution, purchase or exchange, or in any other manner, and all earnings and income of every kind which may be acquired by either of the parties in the future, shall be the sole and separate property of the party so acquiring it, free from all claims, rights and interest of the other; this Agreement shall operate as, and is intended to be, a release, relinquishment, quitclaim and surrender by each of the parties of any rights that he or she may have or assert or claim to have in or to any such property, earnings and income, and shall operate in favor of the party acquiring such property.

ARTICLE III

## THE MARITAL RESIDENCE

A.     Upon the sale of the home located at 163 John Street, Greenwich, Connecticut 06830 (the "Connecticut House") at the time of the closing of the sale, one-half (1/2) of the Net Proceeds shall be paid to Husband and one-half (1/2) of the Net Proceeds shall be paid to Wife.  "Net Proceeds" is defined as the gross sale price of the house less:  institutional mortgage principal (as then reduced); brokerage commission actually paid; transfer taxes; "flip tax", if any; legal fees on the sale; and all other usual expenses customarily (and actually) incurred in the sale of the house.

B.     Upon the sale of the home located at Krom Road, Box 508, Marbletown, New York (the "Marbletown House"), at the time of the closing of the sale, one-half (1/2) of the Net Proceeds shall be paid to Husband and one-half (1/2) of Net Proceeds shall be paid to Wife.

C.     Up until the time of the closings of sale on the Connecticut House and the Marbletown House, all costs incurred in connection with the maintenance of either or both houses shall be paid in the following manner:  one-half (1/2) by Husband and one-half (1/2) by Wife.

D.     Neither party may enter into a contract of sale for any real property unless there is a written agreement by each party as to the purchase price.

5

ARTICLE IV

OTHER PROPERTY

A.    Bank and Security Accounts

1.    Husband's bank and security accounts listed on Schedule "A" annexed hereto are declared to be the sole, separate and distinct property of Husband in and to which Wife relinquishes any and all right, title and interest.

2.    Wife's bank and security accounts listed on Schedule "B" annexed hereto are declared to be the sole, separate and distinct property of Wife in and to which Husband relinquishes any and all right, title and interest.

3.    With reference to the Water Group investment (account number), any dividend paid to Husband in excess of Eight Hundred Thousand ($800,000) Dollars shall be divided, and one-half (1/2) of the amount in excess of Eight Hundred Thousand ($800,000) Dollars shall be paid to Wife.  In the event of sale of this investment, the profit in excess of Eight Hundred Thousand ($800,000) shall be divided, and one-half (1/2) of the profit in excess of Eight Hundred Thousand ($800,000) Dollars shall be paid to Wife.

4.    Husband and wife each represent that neither he nor she has any other bank or securities account.

B.    Tangible Personalty

1.    All tangible personalty (including, but not limited to, jewelry, clothing and household furnishings) which have been divided.

6

C.    Automobiles

1.    The 1982 Mercedes automobile is declared to be the sole, separate and distinct property of Wife in and to which Husband relinquishes any and all right, title and interest.

2.    The 1994 Chevrolet Blazer automobile is declared to be the sole, separate and distinct property of Husband in and to which Wife relinquishes any and all right, title and interest.

3.    The Ford Mustang shall be sold, and proceeds (after the costs of sale are deducted) shall be divided and distributed as follows: sixty (60%) percent to Wife and forty (40%) percent to Husband.

D.    Business and Career

1.    The value of Husband's professional career is declared to be the sole, separate and distinct property of Husband in and to which Wife relinquishes any and all right, title and interest including, without limitation, the value of the following:  (a) any enhancement of Husband's earning capacity achieved during the marriage; (b) any and all remuneration Husband has received or will receive for work begun or performed during the marriage including, without limitation, any and all royalties, publishing and writer's royalties, merchandising income and any other type of income generated from Husband's activities as a celebrity, sports figure, actor, model or performing artist; (c) any and all remuneration received or to be received for Husband's work in connection with or emanating from any contracts or agreements, written or oral, which were negotiated, executed or otherwise reached during

7

the marriage; and (d) any and all copyrights, royalties, residuals, merchandising rights, publicity rights, goodwill (including without limitation "celebrity goodwill") any other types of property rights, whether tangible or intangible, arising out of or resulting from Husband's activities in the entertainment field including, without limitation, his activities as a celebrity, sports figure, actor, model or performing artist.

      2.     The value of Wife's professional career is declared to be the sole, separate and distinct property of Wife in and to which Husband relinquishes any and all right, title and interest including, without limitation, the value of the following: (a) any enhancement of Wife's earning capacity achieved during the marriage; (b) any and all remuneration Wife has received or will receive for work begun or performed during the marriage including, without limitation, any and all royalties, publishing and writer's royalties, merchandising income and any other type of income generated from Wife's activities as a celebrity, actor, model or performing artist; (c) any and all remuneration received or to be received for Wife's work in connection with or emanating from any contracts or agreements, written or oral, which were negotiated, executed or otherwise reached during the marriage; and (d) any and all copyrights, royalties, residuals, merchandising rights, publicity rights, goodwill (including without limitation "celebrity goodwill") any other types of property rights, whether tangible or intangible, arising out of or resulting from Wife's activities in the entertainment field including, without limitation, her activities as a celebrity, actor, model or performing artist.

E.    Corporations

1.    Wife hereby assigns all right, title and interest in and to any and all corporations owned by Husband to Husband, including but not limited to any sums maintained in any corporate account. Wife hereby agrees simultaneously herewith to endorse in blank any stock certificates held by her in said corporations, and Wife agrees to sign a resignation as an officer and/or director of said corporation.

2.    Husband hereby assigns all right, title and interest in and to any and all corporations owned by Wife to Wife, including but not limited to any sums maintained in any corporate account. Husband hereby agrees simultaneously herewith to endorse in blank any stock certificates held by him in said corporations, and Husband agrees to sign a resignation as an officer and/or director of said corporation.

# ARTICLE V

## <u>MAINTENANCE</u>

Taking into consideration all relevant facts and circumstances, including but not limited to the good health of both parties, the financial employment and employment potential of both parties, neither party seeks nor requires and hereby waives any maintenance or support from the other now or in the future.  Therefore, no provision for the support of either party is made herein and is waived.

ARTICLE VI

DEBTS

A.  Wife warrants and represents to Husband that she has not heretofore incurred or contracted any debts or obligations for which Husband or his estate is or may become liable and further warrants and represents that she will not incur or cause to be incurred any debt or liability whatsoever, whether for necessaries or otherwise, upon the credit of Husband or for which Husband or his estate otherwise may be or become liable, and Wife indemnifies Husband and holds him harmless against any and all debts, liabilities and obligations of any and every kind (and any claims and expenses relating thereto) that my be incurred or contracted by her hereafter or that have heretofore been incurred or contracted for her and/or the Child's benefit.  Husband shall notify Wife if any claim is made against him as a result of any debt, charge or liability incurred by Wife and shall afford Wife the opportunity to defend against any such claim at her sole cost and expense.

B.  Husband warrants and represents to Wife that he has not heretofore incurred or contracted any debts or obligations for which Wife or her estate is or may become liable and further warrants and represents that he will not incur or cause to be incurred any debt or liability whatsoever, whether for necessaries or otherwise, upon the credit of Wife or for which Wife or her estate otherwise may be or become liable, and Husband indemnifies Wife and holds her harmless against any and all debts, liabilities and obligations of any and every kind (and any claims and expenses relating thereto) that may be incurred or contracted by him hereafter or that have

heretofore been incurred or contracted for his and/or the Child's benefit.  Wife shall notify Husband if any claim is made against her as a result of any debt, charge or liability incurred by Husband and shall afford Husband the opportunity to defend against any such claim at his sole cost and expense.

## ARTICLE VII

### DIVORCE

A.  This Agreement shall be incorporated either expressly or by reference in any judgment divorcing the Parties but shall not be merged therein.  The agreements and representations set forth herein shall survive such judgment, and shall be independently enforceable.  Neither of the Parties shall request the inclusion in any such judgment of any provision at variance or inconsistent with the provisions of this Agreement.

# ARTICLE VIII

## RECONCILIATION

This Agreement shall not be invalidated or otherwise affected by a temporary reconciliation between the Parties, nor by a resumption of marital relations between them, unless the reconciliation or resumption be accompanied by a written statement, signed by the Parties with respect to such reconciliation and/or resumption, expressly setting forth that they are canceling this Agreement.

## ARTICLE IX

## INCOME TAX

A.  If, in connection with any joint income tax return heretofore filed by the Parties, there is a deficiency assessment, the amount ultimately determined to be due thereon, including interest and penalties, shall be paid one-half (1/2) by Husband and one-half (1/2) by Wife, except to the extent that such assessment results from the failure or neglect of either Husband or Wife to disclose any income earned by him or her which should have been included on such return, in which event the non-disclosing party shall be liable for that portion of the assessment relating to such failure.

B.  All refunds received on any joint income tax return heretofore filed by the Parties shall be divided and distributed as follows:  one-half (1/2) to Wife and one-half (1/2) to Husband.

C.  The Parties shall cooperate in the defense or prosecution of an action or proceeding by or against either or both of them in connection with a tax claim or assessment relating to a joint return.

15

ARTICLE X

RELEASES

A.    Husband releases any and all claims to or upon the property of Wife, whether real or personal and whether now owned or hereafter acquired, to the end that she shall have free and unrestricted right to dispose of her property now owned or hereafter acquired, free from any claim or demand of Husband, and so that her estate and all income derived or to be derived therefrom shall go and belong to the person or persons who become entitled thereto by Will or devise, bequest, intestacy, administration or otherwise, as if Husband had died during the lifetime of Wife. Without in any manner limiting the foregoing, Husband expressly relinquishes any and all rights in the estate of Wife, and expressly relinquishes any and all right of election to take any share of the estate of Wife as in intestacy including, without limiting the foregoing, any right of election under the law of the State of Connecticut and pursuant to any other law of any jurisdiction as said laws may now exist or may hereafter be amended, and any all other right and interest in any real or personal property of which Wife may die seized or possessed, and Husband renounces, and covenants to renounce, any right of administration upon the estate of Wife if and as required or permitted by the laws of practice of any jurisdiction whatsoever.

B.    Wife releases any and all claims to or upon the property of Husband, whether real or personal and whether now or hereafter acquired, to the end that he shall have free and unrestricted right to dispose of his property now owned or hereafter acquired, free from any claim or demand of Wife, and so that his estate and

16

all income derived or to be derived therefrom shall go and belong to the person or persons who become entitled thereto by Will or devise, bequest, intestacy, administration or otherwise, as if Wife had died during the lifetime of Husband. Without in any manner limiting the foregoing, Wife expressly relinquishes any and all right of election to take any share of the estate of Husband as in intestacy including, without limiting the foregoing, any right of election under the laws of the State of Connecticut and pursuant to any other law of any jurisdiction as said laws may now exist or may hereafter be amended and any and all other right and interest in any real or personal property of which Husband may die seized or possessed, and Wife renounces, and covenants to renounce, any right of administration upon the estate of Husband if and as required or permitted by the laws or practice of any jurisdiction whatsoever.

C.    Except for the obligations herein set forth and to be performed by the Parties, and accrued causes of action for a divorce, all of which are expressly reserved, each of the Parties, for himself and herself, and for his or her heirs and legal representatives, forever releases and discharges the other and the other's heirs and legal representatives from any and all debts, sums of money, accounts, contracts, claims, cause or causes of action, suits, dues, reckoning, bonds, bills, specialties, covenants, controversies, agreements, premises, damages, judgments, extents, executions, and demands whatsoever in law or in equity, which each of them had, now has or hereafter can, shall or may have by reason of any matter from the beginning of the world to the execution of this Agreement.

17

ARTICLE XI

ENFORCEMENT

A.    If either of the parties shall fail to satisfy any of the obligations undertaken by him or her, and if he or she dies having failed to fully perform any such obligations, his or her estate shall perform all of the obligations hereunder which he or she would have been obligated to perform had he or she survived, and his or her estate shall remedy all defaults, if any, on his or her part. There shall be a creditor's claim against the defaulting provisions of this Agreement on his or her part to be performed.

B.    If Husband or Wife, by action, counterclaim, proceeding, defense or otherwise, shall seek to set aside this Agreement, or to declare any of its terms and/or conditions invalid, void, or against public policy for any reason including, but not limited to, a claim of incompetency, fraud, coercion, duress, undue influence or mistake, such party shall reimburse the other for any and all of the other's reasonable expenses, costs and counsel fees, provided and to the extent that such action or proceeding results in a judgment or order dismissing or rejecting such claim, in whole or in part.

C.    In the event that either of the parties shall seek enforcement, or sue for breach, of any provision of this Agreement or seek any relief of any kind relating hereto (other than a judgment of divorce) in a court of competent jurisdiction, the unsuccessful party to such action or proceeding shall be liable to other for his or her reasonable expenses, costs and counsel fees incurred in such action or proceeding.

18

## ARTICLE XII

## <u>NOTICES</u>

A.   A notice given or required by this Agreement to be given to Wife shall be deemed given only if in writing and mailed via registered mail to Wife at her address first above set forth, or to such other address which Wife, by registered mail notice, shall have delivered to Husband for the giving of notice.

B.   A notice given or required by this Agreement to be given to Husband shall be deemed given only if in writing and mailed by registered mail to Husband at his address first above set forth, or to such other address which Husband, by registered mail notice, shall have delivered to Wife for the giving of notice.

C.   Paragraphs A and B to the contrary notwithstanding, a written acknowledgment of the by hand delivery of a notice, if signed by the Party to whom the notice is addressed, shall be deemed sufficient, in which event such notice need not be given by registered mail.

D.   The second business day after the day of delivery to the Post Office Registry Clerk shall be deemed the day on which notice is given if given by registered mail.

19

## ARTICLE XIII

### ENTIRE AGREEMENT; DISCLOSURE

A.    This Agreement is entire and complete and embodies all prior and contemporaneous agreements and understandings between the Parties. No representations, agreements, promises, undertakings or warranties of any kind or nature have been made by either of the Parties to the other to induce the execution of this Agreement or any other document executed simultaneously herewith; neither of the Parties shall assert to the contrary that there is or was any other prior or contemporaneous agreement, oral or written, existing between them. No oral statement or written document heretofore executed by the Parties relating to any matter whatsoever shall have any force or effect.

B.    The Parties are satisfied that this Agreement, and all of the terms and provisions hereof, is fair and equitable. The Parties acknowledge that they are entering into this Agreement freely and voluntarily; that they have ascertained and weighed, to their complete satisfaction, all of the facts and circumstances likely to influence their judgment; that they have obtained legal advice independently of each other; that they have been duly apprised of their respective legal rights; that each has specifically been advised of his and her rights under the laws of the State of Connecticut concerning marital property, separate property, and other financial matters; that all the provisions hereof, as well as all questions pertaining thereto, have been fully and satisfactorily explained to them; that they have given due

20

consideration to such provisions and questions; and that they clearly understand and assent to all the provisions hereof.

D.    This Agreement shall not be amended, modified, discharged or terminated except by written agreement of the Parties, signed and subscribed in the form required to record a deed in the State of Connecticut.  This Agreement shall not be amended, modified, discharged or terminated by a judgment or order of any court wheresoever situated, whether or not jurisdiction has been obtained, it being the intention and agreement of the Parties that, notwithstanding any law to the contrary, the power to terminate, modify, amend, suspend or extinguish any part or portion of this Agreement shall be vested in the Parties alone.

E.    Any waiver by either of the Parties of any provision of this Agreement, or of any right hereunder, shall not be deemed a continuing waiver and shall not prevent or estop such Party from thereafter enforcing such provision or right; the failure of either of the Parties to insist in any one or more instances upon the strict performance of any of the terms or provisions of this Agreement by the other shall not be construed as a waiver or relinquishment for the future of any such terms or provisions, but the same shall continue in full force and effect.

## ARTICLE XIV

## <u>MISCELLANEOUS GENERAL PROVISIONS</u>

A.    This Agreement shall be interpreted, construed and governed by the laws of the State of Connecticut.

B.    Each of the parties shall, at any time and from time to time, promptly execute and deliver without any further consideration any and all further acts that the other may reasonably request for the purpose of effectuating the provisions of this Agreement.

C.    With the exception of the child, no other person shall be deemed a thirty-party beneficiary of this Agreement or be entitled to seek enforcement, or to sue for breach, of the terms hereof.

D.    In the event that any term, provision, paragraph, or Article of this Agreement is, or is declared to be, illegal, void or unenforceable, the same shall not affect or impair the other terms, provisions, paragraphs or Articles of this Agreement. The doctrine of severability shall be applied.  The parties do not intend by this paragraph to imply the illegality, voidness or unenforceability of any term, provision, paragraph or Article of this Agreement.

E.    The headings at the beginning of each Article of this Agreement are for reference purpose solely and shall not, in any manner, constitute terms or conditions of this Agreement; nor shall they be applied in interpreting the intent or meaning of any part of this Agreement.

F.    This Agreement shall be binding upon and inure to the benefit of the parties and their respective heirs, executors, administrators, distributees, legal representatives and assigns.

G.    EACH OF THE PARTIES ACKNOWLEDGES THAT HE OR SHE HAS READ EACH AND EVERY PAGE OF THIS AGREEMENT IMMEDIATELY PRIOR TO ITS EXECUTION.

**IN WITNESS WHEREOF**, the parties have executed this Agreement as of the date first above set forth.

_____          _____
Witness                          RONALD GRESCHNER

_____          _____
Witness                          CAROL ALT

d:\alt\sep.agmt

23

STATE OF NEW YORK              )

                                ss.:

COUNTY OF NEW YORK         )

On the _13_ day of January, 1997, before me personally came RONALD GRESCHNER, to me known and known to me to be the individual described in and who executed the foregoing instrument and acknowledged to me that he executed same.

                             _____
                                NOTARY PUBLIC


STATE OF NEW YORK              )

                                ss.:

COUNTY OF NEW YORK         )

MARK A. PULLANO
NOTARY PUBLIC, State of New York
No. 02PU5069692
Qualified in Richmond County
Commission Expires 12/7/98

On the _17th_ day of January, 1997, before me personally came CAROL ALT, to me known and known to me to be the individual described in and who executed the foregoing instrument and acknowledged to me that she executed same.

                                _____
                                NOTARY PUBLIC

                                DOROTHY M. WEBER
                       Notary Public, State of New York
                             No. 31-4778032
                       Qualified in New York County
                       Commission Expires March 30, 1998

d:\alt\sep.agmt

24

SCHEDULE "A"

HUSBAND'S BANK AND SECURITY ACCOUNTS

| ACCOUNT NAME | ACCOUNT NUMBER |
|---|---|
| Painewebber (security) | we 50759 90 |
| Water Group (loan) | |
| Telephone Duty (loan) | |
| Imp Bank | |
| Water Group (investment) | |
| IRA (where) | 65816 |

SCHEDULE "B"

WIFE'S BANK AND SECURITY ACCOUNTS

| ACCOUNT NAME | ACCOUNT NUMBER |
| --- | --- |
| Smith Barney (security) | 643-05548-1-3-430 |
| Smith Barney (investment) | 643-05548-1-3-430 |
| Smith Barney (security) | 643-05547-14-430 |
| Smith Barney (investment) | 643-05547-14-430 |
| IRA (where) | 65815 |
| IRA (where) | 65815 (direct) |
| Keogh (where) | 66025 |
| Keogh (where) | 66817 |

d:\alt\sep.agmt