UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
CAROL A. ALT,

                          Plaintiff,                          Index No. 07 CIV 6004

        -against-

RONALD J. GRESCHNER,

                          Defendant.
-----------------------------------------------------------X

## PLAINTIFF'S MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Plaintiff Carol A. Alt ("Plaintiff"), by her attorneys, The Roth Law Firm, PLLC, hereby

submits her memorandum of law in opposition to Defendant Ronald J. Greschner's

("Defendant") motion to dismiss the Complaint, as follows:

### PRELIMINARY STATEMENT

Defendant argues two grounds for dismissing the Complaint: (i) that the Complaint

invokes the Domestic Relations Exception to subject matter jurisdiction; and (ii) that venue is not

proper in the Southern District of New York.  For all of the reasons stated below, Defendant has

misapplied the Domestic Relations Exception and has ignored the allegations and controlling law

regarding venue.  Defendant's motion to dismiss must be denied in its entirety.

### FACTS

The facts of this case are stated in the Complaint and in the Affidavit of Carol A. Alt,

sworn to September 13, 2007 ("Alt Aff."), and thus will not be stated again, but incorporated by

reference herein.  Notwithstanding, for the convenience of the Court, Plaintiff respectfully re-

states the following facts relevant to the instant motion:

Plaintiff and Defendant were married in East Williston, New York, on November 21, 1983. Complaint ¶ 5 and Alt Aff. ¶ 2.

Plaintiff and Defendant entered into a Property Settlement Agreement on January 13, 1997 (the "Settlement Agreement"). Complaint ¶ 6. Plaintiff and Defendant hired Dorothy Weber, Esq., a New York attorney for the purpose of drafting the Settlement Agreement. Alt Aff., ¶ 3. Plaintiff and Defendant physically appeared in Ms. Weber's office in New York City for the express purpose of negotiating, approving and executing the Settlement Agreement. Id., ¶ 4. The Settlement Agreement was in fact drafted in New York City by Ms. Weber. Id., ¶¶ 3-4. Plaintiff and Defendant did in fact negotiate and execute the Settlement Agreement in New York, New York. Complaint ¶ 5 and Alt Aff. ¶ 4. Further, page 24 of the Settlement Agreement confirms that both Parties executed the Settlement Agreement in the State of New York, County of New York. Complaint, Exh. A, pg. 24.

Although the Settlement Agreement was subsequently incorporated in a Florida divorce decree (Complaint, ¶¶ 10-11), the Settlement Agreement specifically states that such agreement "shall not be merged therein. The agreements and representations set forth herein shall survive such judgment, and shall be independently enforceable." Complaint, Exh. A, pg. 13. Moreover, the Settlement Agreement provides that "[t]his Agreement shall be binding upon and inure to the benefit of the parties and their respective heirs, executors, administrators, distributes, legal representatives and assigns." Id., Exh. A, pg. 23.

By the Complaint, Plaintiff does *not* seek to amend the Florida divorce decree -- nor does Plaintiff seek alimony, maintenance, child support, custody or any other type of relief only appropriately brought before a Family Court. Plaintiff merely seeks monetary damages in connection with the sale of a securities investment.

# ARGUMENT

## I.    The Claims Alleged in the Complaint Do Not Fall Within the Domestic Relations Exception to Federal Subject Matter Jurisdiction

The domestic relations exception to federal jurisdiction "is not based on Article III of the

Constitution but is instead an interpretation of the diversity statute, 28 U.S.C. § 1332." Williams

v. Lambert, 46 F.3d 1275, 1283 (2d. Cir. 1995) (citing Ankenbrandt v. Richards, 504 U.S. 689,

700-02 (1992). The law is clear that, ***the exception is very narrow*** ... [It does not] strip the

federal courts of authority to hear cases arising from the domestic relations of persons unless

they seek the granting or modification of a divorce or alimony decree ... or a child custody

decree." Id. (quoting Ankenbrandt, 504 U.S. at 701-04 (citation omitted) (emphasis added)).

Indeed, the exception is so narrow that the Second Circuit Court of Appeals has refused to even

consider the domestic relations exception in cases merely seeking monetary damages (as is the

case here).   In King v. Commissioner and New York City Police Dept., the Second Circuit held:

> We need not examine this question, however, because even under the
> broadest interpretation of the exception, it applies only to cases that seek
> issuance or modification of divorce, alimony, or child custody decrees.
> Appellant is not seeking a domestic relations award, and he is not asking
> that his parental rights be reinstated.  Instead, ***his complaint seeks
> monetary damages.  The domestic relations exception to federal
> jurisdiction is therefore irrelevant to this action***.

King, 60 Fed. Appx. 873, 875, 2003 U.S. App. LEXIS 5373, No. 00-9234, at **5 (2d. Cir.,

March 19, 2003) (emphasis added); see also, American Airlines, Inc. v. Block, 905 F.2d 12, 14

(2d. Cir. 1990) (holding that "the scope of this matrimonial exception to federal jurisdiction is

rather narrowly confined, only where a federal court is asked to grant a divorce or annulment,

determine support payments, or award custody of a child does it generally decline jurisdiction

pursuant to the matrimonial exception" (internal citations omitted)).

3

Along with citing <u>Ankenbrandt</u> -- which, to be clear, held that the domestic relations exception only applies to cases seeking ***the issuance of divorce, alimony or child custody*** (504 U.S. at 703-04), which is not the case here -- Defendant heavily relies on two other cases: (i) a Sixth Circuit case entitled <u>McLaughlin v. Cotner</u>, 193 F.3d 410 (6th Cir. 1999); and (ii) a District of Connecticut case entitled <u>Weiss v. Weiss</u>, 375 F.Supp.2d 10 (Conn. Dist. 2005). Both cases are distinguishable.

Of great relevance (which Defendant ignores in its entirety) is the fact that in both <u>McLaughlin</u> and <u>Weiss</u>, during the pendency of each federal court action, the respective plaintiffs also commenced parallel state court actions seeking to address the very issues alleged in federal court, and indeed, to hold the defendants in contempt for violating the respective state courts' judgment. The court in <u>McLaughlin</u> took issue with the commencement of simultaneous state and federal court actions:

> On or about January 27, 1997, plaintiff filed a motion to show cause in state court to hold defendant in contempt of court for failure to sell the marital home. (193 F.3d at 411) ... [W]hen plaintiff filed suit in federal district court, the same issue of whether Mr. Cotner had substantially complied with the separation agreement in regard to marital property was being addressed in state court. Plaintiff has, thus, now filed two appeals based on the same issue regarding the sale of the marital home, one in appellate court and the present one in the Sixth Circuit Court of Appeals.

193 F.3d at 413. This very same concern was present in <u>Weiss</u>:

> ... the [divorce] judgment file was entered on May 22, 2003. On September 12, 2003, the plaintiff filed a motion for contempt alleging that the defendant had failed to pay the plaintiff's stable board of $650 monthly, and also had failed to pay the plaintiff 50% of all fees from closed divorce and custody files at Weiss & Weiss as of November 1, 1999, and 20% of the fee from the *Cote v. Tomasso* worker's compensation case, as stipulated in the dissolution agreement. ... On November 3, 2003, however, the defendant filed a further motion to clarify the stable board provision and to clarify the definition of a "personal injury case" under the terms of the dissolution agreement. ... On May 5, 2005, plaintiff appealed the clarification ruling to the Connecticut

> Appellate Court .... Before defendant's motion for clarification, plaintiff
> filed the instant action in federal court on October 29, 2004. Court One of
> plaintiff's Second Amended Complaint, filed February 22, 2005, alleges
> that defendant breached the provision of the separation agreement
> requiring him to pay plaintiff's horse board and the provision requiring
> him to pay the plaintiff one-third of fees collected from personal injury
> cases.

Weiss, 375 F.Supp.2d at 13-14 (internal citation omitted). There is no such pending parallel

state court action here -- nor does Defendant make any such allegation.

Moreover, Weiss -- which Defendant disingenuously argues is "a case identical to that at

bar" (Defendant's Memorandum of Law, pg. 4) -- is even further distinguished by the terms of

the underlying agreement.

In Weiss, despite plaintiff's claim to the contrary, the court found that the separation

agreement therein specifically stated that it did *not* survive a divorce judgment and was thus *not*

independently enforceable in a court of law. 375 F.Supp.2d at 16. Whereas, the Settlement

Agreement here specifically states that such agreement "shall not be merged therein. *The*

*agreements and representations set forth herein shall survive such judgment, and shall be*

*independently enforceable*." Complaint, Exh. A, pg. 13 (emphasis added).

Perhaps helpful to the Court is the Eastern District of Virginia's well-reasoned analysis of

the domestic relations exception in a case entitled Hildebrand v. Lewis, 281 F. Supp.2d 837

(E.D.Va. 2003). Therein, the Hildebrand court opined as follows:

> ... both *Ankenbrandt* and earlier Fourth Circuit precedent teach that the
> jurisdictional determination underlying the domestic relations exception
> must be based on the nature of the claim at issue, not merely the
> relationship between the parties. *See* Raftery v. Scott, 756 F.2d 335, 338
> (4th Cir. 1985) ("[a] district court may not simply avoid all diversity cases
> having intrafamily aspects. Rather it must consider the exact nature of the
> rights asserted or of the breaches alleged") (quoting Cole v. Cole, 633
> F.2d 1083, 1087 (4th Cir. 1980)). Indeed, in *Cole*, cited by the Supreme
> Court in *Ankenbrandt* as one of the "better reasoned views" in this area,
> the Fourth Circuit stated the following: "where alleged breaches (whether

5

tortuous or contractual in nature) are of a duty which does not arise solely
from family relations law, a federal district court may not deny jurisdiction
simply on the grounds of the supposed etiology of the emotions
underlying either the alleged breach by the defendant or the decision by
the plaintiff to bring suit. *Cole*, 633 F.2d at 1088.

281 F. Supp.2d at 842. Ultimately, the court in Hildebrand found no merit in defendant's

argument to dismiss the complaint based on the domestic relations exception, stating:

> Thus, because Hildebrand does not seek the issuance or modification of a
> divorce or alimony decree, or "a determination of entitlement to custody
> or any other adjustment of family status," [defendant's] motion to dismiss
> based on the domestic relations exception to federal courts of diversity
> jurisdiction must be denied. Wasserman v. Wasserman, 671 F.2d 832, 835
> (4th Cir. 1982); *see also* Ankenbrandt, 504 U.S. at 703. Indeed, ***to hold
> otherwise would essentially strip federal courts of diversity jurisdiction
> any time a contract or decree with familial ties is required to be
> referenced or interpreted in any respect, a result which would expand
> the narrowly-construed domestic relations exception far beyond its
> intended scope.***

281 F. Supp.2d at 843-44 (emphasis added). It bears noting that in reviewing the separation

agreement and the final divorce decree at issue in Hildebrand, the court also reasoned that the

language of those documents made defendant's motion to dismiss based on the domestic

relations exception, "absurd":

> The absurdity of Lewis' argument is further underscored by the fact that
> ***the instant Separation Agreement is binding not only on Lewis and
> Hildebrand, but also on "their respective heirs, successors, executors,
> personal representatives, and assigns," as well.*** Thus, to accept the
> argument advanced by Lewis would render federal courts forever without
> jurisdiction to hear any contractual dispute arising out of any of the rights
> established or granted in the Separation Agreement, a nonsensical result
> which finds no support in law. Also noteworthy is the fact that ***the Final
> Decree of Divorce in this case only "ratified, affirmed and incorporated"
> the Separation Agreement, and expressly stated that the Separation
> Agreement was "not merged" into the decree.*** As recognized in Doherty
> v. Doherty, 9 Va. App. 97, 383 S.E.2d 759, 760, 6 Va. Law Rep. 284 (Va.
> App. 1989), "where the circumstances are such that the agreement,
> although incorporated or approved in the decree, is not merged therein, the
> parties may enforce it by suing on the agreement rather than on the

judgment."[1]  Indeed, the instant Separation Agreement provides that "this Agreement shall independently remain in full force and effect, and shall survive any decree, order, or judgment hereafter entered and shall forever be binding and conclusive upon the parties." Thus, under settled Virginia law, Hildebrand may properly sue under the Separation Agreement given that it was not merged in the Final Decree of Divorce.

281 F. Supp.2d at 844, fn 14 (emphasis added).  The language of the Settlement Agreement and Divorce Decree (as the well as the law) in the case at bar is precisely the same.

Here, the Settlement Agreement specifically states that such agreement "shall not be merged therein.  The agreements and representations set forth herein shall survive such judgment, and shall be independently enforceable." Complaint, Exh. A, pg. 13.  The Divorce Decree, as in Hildebrand, merely "confirmed and ratified" the Settlement Agreement. See, Affidavit of Ronald Greschner in support of Defendant's motion, Exh. C.  And finally, as in Hildebrand, the Settlement Agreement here provides that "[t]his Agreement shall be binding upon and inure to the benefit of the parties and their respective heirs, executors, administrators, distributes, legal representatives and assigns." Id., Exh. A, pg. 23.  While Plaintiff will stop short of calling Defendant's motion "absurd," there is certainly ample case law to deem it so.

Under both the facts and the law, the domestic relations exception simply does not apply here.[2]  This court has subject matter jurisdiction over this case.

---

[1] The law is the same in New York. See, Merl v. Merl, 67 N.Y.2d 359, 362 (Ct. App. N.Y. 1986) ("A separation agreement that is incorporated into but not merged with a divorce decree is an independent contract binding on the parties unless impeached or challenged for some cause recognized by law"); see also, Hoyt v. Hoyt, 307 A.D.2d 621, 622, 763 N.Y.S.2d 152, 153 (3rd Dept. App. Div. 2003) ("either party can bring a separate plenary action after the divorce judgment, in order to enforce the terms of a stipulation which is not merged in the judgment").

[2] Defendant also argues that Plaintiff's claim for breach of fiduciary duty does not properly state a tort claim exclusion for purposes of the domestic relations exception (i.e. an exception to the exception).  As Defendant has not, however, filed a motion to dismiss Plaintiff's claim for breach of fiduciary duty under FRCP § 12(b)(6) and as Defendant has misapplied controlling law regarding the domestic relations exception, Defendant's argument is wholly irrelevant and thus Plaintiff will not address the merits of such argument at this time.

## II.    Venue is Proper in the Southern District of New York

Where subject matter jurisdiction is founded on diversity of citizenship, 28 U.S.C. § 1391(a) controls.  As alleged in ¶¶ 3-4 of the Complaint, 28 U.S.C. § 1391(a)(2) is invoked herein.

> A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in … (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred…

The Complaint alleges that Plaintiff resides in New York and Defendant resides in Florida (and the amount in controversy meets the requirements of 28 U.S.C. § 1332). See, Complaint, ¶¶ 1-3.[3]  Accordingly, the only question is whether the Southern District of New York is "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(a)(2).  To that end, "[i]f the court chooses to rely on pleadings and affidavits, the plaintiff need only make a prima facie showing of [venue].  But if the court holds an evidentiary hearing … the plaintiff must demonstrate [venue] by a preponderance of the evidence." Gulf Ins. Co. v. Glasbrenner, 417 F.3d 353, 355 (2d. Cir. 2005) (internal citations omitted).

Here, notwithstanding which course of review the Court wishes to take, the evidence is incontrovertible that the Settlement Agreement -- the agreement upon which the Complaint is based -- was negotiated, approved and executed all while both Parties where physically within the Southern District of New York. See, Complaint, ¶ 4 and Alt. Aff., ¶¶ 3-4.  Those facts -- in and of themselves -- make venue proper in the Southern District of New York.  Counsel's conclusory statement in footnote 2 of her affidavit in support of Defendant's motion to dismiss

---

[3] Defendant's only assertion regarding its motion to dismiss for lack of subject matter jurisdiction is that the "domestic relations exception" applies in this case and thus defeats diversity under 28 U.S.C. § 1332. The domestic relations exception aside, Defendant does not contest that the Parties are citizens of different states or that the amount in controversy requirement has been met.

that, "[t]he claim of 'negotiation' of the Agreement (presumably by the plaintiff) in New York is

of no consequence, either as a matter of subject matter jurisdiction or venue[,]" ignores

controlling case law.

First and foremost, the Second Circuit follows the view that "civil venue statute permits

venue in multiple judicial districts as long as a 'substantial part' of the underlying events took

place in those districts." Gulf Ins. Co. v. Glasbrenner, 417 F.3d at 356 (2d. Cir. 2005); see also,

Bates v. C & S Adjustors, 980 F.2d 865, 867 (2d. Cir. 1992) (holding that the revised statute

"does not, as a general matter, require the District Court to determine the best venue"). Thus,

Defendant's assertion that another District may be more appropriate is of no moment in this

analysis.

In Gulf Ins. Co. v. Glasbrenner, the Second Circuit Court of Appeals analyzed whether

the Southern District of New York was an appropriate venue where a complaint alleged that an

insurance policy "was submitted, approved and issued" in the State of New York -- but where

said complaint failed to allege which of New York's four judicial districts was proper. 980 F.2d

at 357. The Court stated:

> New York State encompasses four judicial districts, but the complaint
> does not specify in which one the policy was issued. At oral argument,
> [Plaintiff's] counsel indicated that the policy was "*negotiated, approved
> and executed*" at [Plaintiff's] headquarters, which the complaint places
> squarely within the Southern District. But neither the complaint nor the
> policy itself (incorporated by reference into the complaint) unambiguously
> lays venue in the Southern District. Nevertheless, *if [Plaintiff] can prove
> these facts, venue would be appropriate in the Southern District*.

980 F.2d at 357-58 (emphasis added). Here, Defendant submitted an affidavit in support of his

motion to dismiss the Complaint -- but therein, did not dispute the allegation that he negotiated

and executed the Settlement Agreement in New York, New York (despite the Complaint, at ¶ 4,

clearly alleging such facts). He does not because he cannot. The Settlement Agreement (which

forms the basis of this lawsuit) was "negotiated, approved, and executed" by the Parties while physically present in the State of New York, County of New York. <u>See</u>, <u>Complaint</u> at ¶ 4 (and Exh. A annexed thereto, pg. 24) and <u>Alt. Aff</u>. at ¶¶ 3-4. These facts are not, and cannot be, contested.

Venue is proper in the Southern District of New York.

## **CONCLUSION**

For all of the reasons stated above, this Court has subject matter jurisdiction to hear this case and venue is proper in the Southern District of New York. Accordingly, Defendant's motion to dismiss the Complaint pursuant to FRCP §§ 12(b)(1) and 12(b)(3) must be denied in its entirety.

DATED:      New York, New York
            September 20, 2007

THE ROTH LAW FIRM, PLLC

By:_____
    Richard A. Roth (RAR 5538)
    Jordan M. Kam (JK 8938)
    545 Fifth Avenue, Suite 960
    New York, New York 10017
    Tel: (212) 542-8882
    Fax: (212) 532-8883
    *Attorneys for Plaintiff Carol A. Alt*

## CERTIFICATE OF SERVICE

STATE OF NEW YORK        )
                                          ) ss.:
COUNTY OF NEW YORK   )

      JORDAN M. KAM, ESQ., affirms under penalties of perjury:

1.     I am over the age of 21 years, am not a party to the action, and reside in New York, New York.

2.     On September 20, 2007, I served, by FedEx, Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss, and Affidavit of Carol A. Alt in opposition to Defendant's Motion to Dismiss, on Defendant's attorney, as the following address:

     Nancy Ledy-Gurren, Esq.
     Ledy-Gurren Bass & Siff, LLP
     475 Park Avenue South, 8th Floor
     New York, NY 10016

                                          Jordan M. Kam