UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
CAROL A. ALT,

                    Plaintiff,

                                                07 CIV 6004 (CM)

          -against-


RONALD J. GRESCHNER,
                    Defendant.
----------------------------------------------------------------X

## PRE-TRIAL ORDER

The parties having conferred among themselves and with the Court pursuant to Fed.

R. Civ. P. 16, the following statements, directions and agreements are adopted as the Pretrial Order

herein.


## I. NATURE OF THE CASE

Plaintiff Carol Alt initiates this action against Ron Greschner.  Plaintiff claims that

defendant Greschner, her ex-husband, breached certain provisions of the parties 1997 Property

Settlement Agreement ("Separation Agreement").   The defendant is alleged to have breached

that portion of the Separation Agreement that states that Greschner was required to pay Alt fifty

percent of any profits which he realized as a result of the sale of an investment called the "Water

Group Investment."    Plaintiff also sues for Unjust Enrichment, Breach of Fiduciary Duty and

for an Equitable Accounting.  Plaintiff claims that Greschner realized $18 million (American

dollars) in profits from his sale of the Water Group Investment Alt also demands reimbursement

for her legal fees incurred in the initiation and prosecution of this action.

Alt also claims that Defendant either sold the investment within the past year or concealed from her the actual date of the sale. Defendant should therefore be equitably estopped from arguing that the statute of limitations should bar her from recovery. Alt further claims that Defendant continues to conceal from her the date of the sale, notwithstanding the fact that the Court ordered him to produce all such documents on numerous occasions.

Defendant Greschner maintains that, pursuant to the terms of the Separation Agreement, the sale profits of the Water Group Investment, to the extent that such profits were $800,000 (American dollars) or less, were his separate property, to which and in which Alt has neither right nor interest. Greschner asserts that the Water Group Investment, which was owned by his Canadian company, Ron Greschner Enterprises, Ltd., was sold in September 1997, and that after accounting for the original investment dollars, expenses and taxes paid, the profit on such sale was less than $800,000. Accordingly, Greschner never had any obligation to pay Alt money with regard to the Water Group Investment. Moreover, Greschner maintains that any claim by Alt is governed by a six year statute of limitations, and that any claim accrued no later than the date of the sale of the Water Group Investment, September 30, 1997. Greschner also demands reimbursement for his legal fees incurred in the defense of this action.

## II. **JURY/NON-JURY**

This is to be a bench trial, as the parties agreed to not proceed with a jury trial. The estimated length of trial is two days.

### III.  <u>STIPULATED FACTS</u>

1.    Carol Alt is a citizen of the United States and a resident of the State of New York.

2.    Ron Greschner is a citizen of both the United States and Canada, and is a resident of the State of Florida.

3.    Carol Alt and Ron Greschner were married in East Williston, New York, on November 21, 1983.

4.    On January 13, 1997, Carol Alt and Ron Greschner, while physically present in New York, executed a Property Settlement Agreement, which was a Separation Agreement

5.    At the time of the Separation Agreement, Alt and Greschner were residents of Connecticut.

6.    After the execution of the Separation Agreement, the Courts of Florida assumed jurisdiction over the Alt/Greschner marriage.

7.    An addendum to the Separation Agreement was entered into by Alt and Greschner, and approved by the Florida Court, in March 2001, and governed the disposition of additional property.

8.    Judgment of Dissolution of Marriage, dated March 15, 2001, which dissolved the Alt/Greschner marriage was issued by the Florida Court.

9.    The Judgment of Dissolution of Marriage confirmed and ratified the Separation Agreement.

10.    The Separation Agreement was incorporated, but not merged, into the Judgment of Divorce by agreement of the parties.

## IV. <u>PARTIES' CONTENTIONS</u>

The pleadings are deemed amended to embrace the following, and only the following, contentions of the parties:

**A.     <u>Plaintiff's Proposed Findings of Fact (Non-Jury Trial)</u>**

1.     After the Water Group Investment was made, the company was in the midst of a hostile takeover. Greschner took money from Alt's account to assist the company in staving off a hostile takeover.

2.     The Water Group Investment was, at the time of the execution of the Separation Agreement, a company run and owned by Greschner's brother-in-law.

3.     At the time of the share exchange, Greschner and Alt communicated. Greschner informed Alt that the shares were being exchanged and that for some insider reason, the parties would have to wait ten years to sell the investment.

4.     The Water Group loan was a loan made by Plaintiff and Defendant during the marriage in which the parties agreed that Alt would share in the investment.

5.     The Separation Agreement was drafted by attorney Dorothy M. Weber who was, after informed consent, counsel to both parties.

6.     The Separation Agreement created a duty on the part of Greschner to inform Alt of any sale of the WaterGroup investment and account for any profits resulting in such sale. The Separation Agreement also created a duty on the part of Greschner to inform Alt of any dividends paid to Greschner from the WaterGroup investment and account for any such dividends.

4

7.  Greschner never informed Alt of any sale of the WaterGroup investment nor did he provide Alt with an accounting of any sale.  In fact, at one point within the past year, while at a New York Rangers hockey game in New York City, Greschner specifically led Alt to believe that the WaterGroup investment had yet to be sold.  Moreover, Greschner never informed Alt of any dividends paid to Greschner from the WaterGroup investment nor did he provide Alt with an accounting of any such dividends.

8.  On or about September 30, 1997 Greschner owned 2,126 shares of a company called WaterGroup Capital which owned an interest in WaterGroup Companies.  On that day, the individual owners of WaterGroup Capital terminated the company and became direct owners of WaterGroup Companies.  Greschner then owned 1675.29 shares of the Water Group Companies.  Similarly on that same day, WaterGroup Companies was purchased by US Filter, an American company, pursuant to a Share Purchase Agreement.  Greschner did not sell his investment in the WaterGroup investment in 1997 (as now claimed by Greschner) but instead acquired, in exchange for his shares of WaterGroup Companies, 80,021 shares of US Filter.

9.  On the same day Greschner received 23,981 shares of US Filter for his WaterGroup Investment. Subsequently, Greschner sold his shares in US Filter for an undisclosed amount but believed to be several million dollars.

10.  Greschner has, and continues to conceal the monies realized from his sale of the WaterGroup investment (which subsequently became an investment in US Filter) in breach of the Separation Agreement.  Additionally, Greschner may have received

5

dividends from the WaterGroup investment that he has not disclosed to Alt, for which he may owe Alt money pursuant to the terms of the Separation Agreement.

11.     There was no "expenses" incurred by Greschner in connection with the Water Group investment as that term is related to the term "profit" in the Separation Agreement.  Any taxes,  legal or accounting fees paid by Greschner in connection with the Water Group investment are expenses personal to Greschner -- in the same sense that when Alt receives the monies owed to her under the Separation Agreement, Alt will have to pay her own taxes, legal and accounting fees.  Investment costs are not an expense as that term is related to the term "profit" in the Separation Agreement because the parties already took into consideration the investment costs (which were bourn by both parties) when they agreed to split the proceeds from the sale.

12.     Plaintiff is entitled to fifty percent of the proceeds of the sale less $800,000 plus interest at the statutory rate and legal fees.

**B.     Plaintiff's Proposed Conclusions of Law**

1.     Plaintiff may assert claims in addition to breach of contract.  *See Warren v. Gay*, 41 Conn. L. Rptr. 206 (2006)(allowing the following claims in an action for breach of marital dissolution contract in addition to breach of contract: compensatory damages, prejudgment interest, equitable distribution including specific performance, accounting, constructive trust, resulting trust, unjust enrichment and money judgment).

2.     Plaintiff has a claim for breach of fiduciary duty.  Under Connecticut law, a fiduciary relationship is defined as one "characterized by a unique degree of trust and confidence between the parties, one of whom has superior knowledge, skill or expertise and is under a duty to

represent the interests of the other..." *Weisleman v. Hoeniger*, 103 Conn. App. 591, 596 (2007). The Separation Agreement, of which Alt claims Greschner breached, unequivocally creates a duty on Greschner to inform Alt of any sale of, or dividends paid from, the Water Group Investment. As the investment was not in Alt's name, but belonged solely to Greschner (subject the provisions of the Separation Agreement), Greschner was placed in a unique degree of trust and confidence of which Greschner had superior knowledge to that of Alt and of which Alt was forced to rely.

3.   <u>Plaintiff has a claim for an accounting</u>. To support an action of accounting, there must be a fiduciary relationship, or the existence of a mutual and/or complicated accounts, or a need of discovery, or some other special ground of equitable jurisdiction such as fraud. *C & S Research Corp. v. Holton Co.*, 36 Conn.Supp. 619, 621 (1980). Not only did a fiduciary duty exist so as to warrant the right for an account, but even had there not been a fiduciary duty, by contract (the Separation Agreement) Greschner agreed that he would have to account for monies paid to him as a result of the any sale of, or dividends paid from, the Water Group investment.

4.   <u>Defendant is equitably estopped from asserting the statute of limitations as a defense because he concealed facts that prevented Plaintiff's knowledge of Defendant's breach</u>. Under New York law, it is well-settled that where a defendant induces a plaintiff to refrain from instituting an action by an act of concealment of the true facts, the defendant may be estopped from using the statute of limitations to dismiss an otherwise untimely suit against the plaintiff. *Eagle Comtronics, Inc. v. Pico Products, Inc.*, 682 N.Y.S.2d 505 (4th Dep't 1998). Courts have the power, both at law and equity, to bar the assertion of the affirmative defense of the statute of limitations, where it is the defendant's affirmative wrongdoing, involving concealment, which

produced the long delay between the accrual of the cause of action and the institution of the legal proceeding. *General Stencils, Inc. v. Chiappa*, 18 N.Y.2d 125 (1966). Here, not only did Greschner fail to account for any monies paid to him as a result of any sale of, or dividends paid from, the Water Group investment, but Greschner also concealed any such information from Alt. Greschner must be estopped from asserting a statute of limitations affirmative defense when Greschner's own wrongful conduct is the direct cause of Alt's lack of knowledge of Greschner's breach of contract.

5.    The separation agreement should not be construed against either party. Where a separation agreement is ambiguous, it should be construed against the drafter. *Murphy v. Murphy*, 1995 WL 512690 (Conn. Super. 1995). The separation agreement is not ambiguous, and even if it is, it should not be construed against either party because it was drafted by an attorney acting on behalf of both parties, after informed consent.

6.    Plaintiff is entitled to recover the cost of reasonable attorneys fees' and disbursements. Pursuant to the plain language of Article XI(C) of the Separation Agreement, Plaintiff is entitled to recover the legal fees and costs incurred as a result of this action.

**C.    Defendant's Proposed Findings of Fact (Non-Jury Trial)**

1.    A loan was made to WaterGroup ["the WaterGroup Loan"] by Greschner and Alt (irrespective of the account from which the money was taken) and, in the Separation Agreement, the parties specifically agreed that the WaterGroup Loan was the Separate Property of Greschner.

2.    WaterGroup, in which Ron Greschner Enterprises, Ltd. made an investment, was a Canadian Company in which Don Fettes, Mr. Greschner's brother-in-law and a respected

8

businessman, had an interest (sold at the same time as RGE's interest).  Mr. Fettes held an executive management position with WaterGroup, and still does.

3.     Any and all conversations between Alt and Greschner concerning the WaterGroup Investment are merged into the Separation Agreement and cannot be offered in evidence.

4.     If Alt had any interest in the WaterGroup Investment, the only duty of Greschner was to account to Alt for profits in excess of $800,000 (American dollars).

5.     Greschner was not a fiduciary vis-à-vis Alt as a result of the Separation Agreement.

6.     The Separation Agreement was drafted by attorney Dorothy M. Weber who was Carol Alt's attorney.

7.     Ron Greschner did not have an attorney in the negotiation of the Separation Agreement.

8.     The Separation Agreement, Schedule A lists the separate property of Ron Greschner,. .

9.     The Separation Agreement, Schedule B lists the separate property of Carol Alt

10.     The Water Group Investment was the separate property of Ron Greschner, pursuant to Schedule A of the Separation Agreement.

11.     The WaterGroup Loan was the separate property of Ron Greschner, to which Carol Alt has no claim.

12.     Carol Alt's interest, if any, in the Water Group Investment, was in a share of any profit in excess of $800,000 (American dollars) realized from RGE's sale of the Water Group Investment.

13.     RGE was a Canadian Corporation and Ron Greschner was the majority shareholder.

14.     As of September 30, 1997, The WaterGroup Investment consisted of RGE's owned percentage interest (21.26%), or 1675.29 shares in the WaterGroup Investment.

15.  RGE sold its interest in the WaterGroup Investment for 56, 040 shares of a United States
     Filter Corporation affiliate, Canandian company 1258010 Ontario Inc. ["USF"], with an
     agreed-to value of $49.81 per share.

16.  RGE's sale of the WaterGroup Investment was made for a price of 56,040 shares of USF
     representing a value of $2,101,061.31 Canadian Dollars.

17.  RGE was obligated to contribute 10% of its shares, or 5,604 shares (at a value of $49.81
     per share), to an escrow account [Escrow Contribution], for the payment of expenses and
     costs pertaining to the investment.

18.  RGE's Escrow Contribution was 279, 135.24 Canadian dollars.

19.  RGE's Escrow Contribution was 210,148.64 American dollars.

20.  There were two persons, Morrison and Tidd, who owned options on the Water Group
     shares.

21.  Morrison, pursuant to an Option Agreement, had the right to 10,742 Shares.

22.  Morrison exercised that Option.

23.  Tidd, pursuant to an Option Agreement, had the right to 1,992 Shares.

24.  Tidd exercised that Option.

25.  The total amount of Shares provided to Morrison and Tidd was 12,467 Shares ["Option
     Shares"].

26.  The total value of the Optioned Shares was $263,597 Canadian dollars.

27.  RGE was obligated to transfer, and did transfer, 21.26% of the total Option Shares, or
     2650.48 USF shares, at $49.81 per share, to Morrison and Tidd.

28.   The value of RGE's contribution of USF shares to the Option Shares was $132,020.61 Canadian dollars.

29.   The value, in American dollars, of the RGE contribution to the Option Shares was $99,392.51.

30.   RGE paid expenses, in the nature of taxes, legal and accounting fees [Water Group Expenses], with respect to the WaterGroup Investment, in the aggregate amount of $930,455.74 in Canadian dollars.

31.   The value, in American dollars, of the WaterGroup Expenses paid by RGE was $666,908.

32.   The original purchase price for the WaterGroup Investment (Investment), made by RGE in 1983, was $210,000 Canadian dollars.

33.   The value of the Investment in American dollars was $176,397.52.

34.   The total value of the Shares received for the WaterGroup investment by RGE, was $2,101,061.31 Canadian dollars [$2,512,217.16 Canadian dollars, less the Canadian dollar value of the RGE Escrow contribution (279, 135.24 Canadian dollars), less the total value of the RGE contribution to Option Shares ($132,020.61)].

35.   The total value of the Shares received for the Water Group investment by RGE, was $1,581,796.61 American dollars [$1,891,337.76 American dollars, less the American dollar value of the RGE Escrow contribution ($210,148.64 American dollars), less the total value of the RGE contribution to Option Shares ($99,392.51 American dollars)].

36.   The "profit", as such term is used in the Separation Agreement, means the total value of the sale price, less the (1) contributions to Option Shares and Escrow, (2) investment cost and (3) taxes and expenses.

37.   The "profit" to RGE from the sale of the WaterGroup Investment was $960,605.57 Canadian dollars.

38..   The profit to RGE from the sale of the WaterGroup Investment was $738,490.79 American Dollars.

39.   The profit to RGE from the WaterGroup Investment was not of a sufficient amount to require any account or payment to Carol Alt.

40.   Ron Greschner liquidated his USF shares sometime after the restrictions on the shares were lifted, sometime in 1998 or early 1999.

43.   Ron Greschner owns no interest in the USF shares and has not for at least six years.

44.   The September 1997 sale of the WaterGroup investment, for shares of the USF affiliate, at a set stock price, constituted the sale of the investment for the purposes of the Separation Agreement, in any event, and the defendant's date of liquidation is pertinent only to the payment of expenses and taxes.

45.   Carol Alt never interposed a claim, for an interest in profits of the WaterGroup investment, until June 25, 2007.

**D.    Defendant's Proposed Conclusion of Law**

1.   The Separation Agreement is controlled by Connecticut law.

Inasmuch as the Separation Agreement provides that the agreement is to be governed by Connecticut law, that state's substantive law governs whether plaintiff has viable claims for: (1) breach of the contract (First Cause of Action), (2) unjust enrichment (Second Cause of Action), (3) breach of fiduciary duty (Third Cause of Action) and, (4) an accounting (Fourth Cause of Action). This result is mandated New York's choice of law rules which must be applied, in

actions based on diversity, by federal courts sitting in New York. Woodling v. Garrett Corp., 813 F.2d 543 (2d Cir. 1987). Where the subject agreement between the parties contains a choice of law provision for a jurisdiction which has a substantial relationship to the parties, the law of New York requires that such provision be honored with respect to all substantive matters. Id. Accordingly, given the relationship of the state of Connecticut to the parties and their marriage, the choice of law provision electing Connecticut law must be enforced.

2.    Plaintiff's Only Legally Cognizable Claim Is for Breach of Contract.

Separation agreements are construed and enforced as contracts and the remedies are no other or different than the remedies provided by law for the breach of any other contract. Lasprogato v. Lasprogato, 127 Conn. 510, 514, 18 A.2d 353 (1941); see also, Harvey v. Daddona, 29 Conn. App. 369, 615 A.2d 177 (1992). The only claim which plaintiff may assert for breach of the Property Settlement Agreement, therefore, is one sounding in breach of contract.

3.    Plaintiff Does Not Have A Cognizable Claim for Unjust Enrichment.

Unjust enrichment is a common-law doctrine that provides restitution when justice requires. United Coastal Industries, Inc. v. Clearheart Construction Company, 71 Conn. App. 506, 511-512, 802 A.2d 901 (2002). It is a legal doctrine to be applied when no remedy is available pursuant to a contract. Id. Since plaintiff seeks to recover based on a breach of the Separation Agreement, and the only source of any right to profits from the sale of the Water Group investment is the Separation Agreement, she is precluded from maintaining a claim for unjust enrichment.

4.    Plaintiff Does Not Have A Cognizable Claim For Breach Of Fiduciary Duty.

Under Connecticut law, a fiduciary relationship is defined as one characterized by a unique degree of trust and confidence between the parties, one of whom has superior knowledge, skill or expertise and is under a duty to represent the interests of the other... Weisleman v. Hoeniger, 103 Conn. App. 591, 596, 930 A.2d 768 (2007) [citing *Murphy v. Wakelee*, 247 Conn. 396, 721 A2d 1181 (1998)]. Absent the existence of a fiduciary relationship between the parties, it is axiomatic that a party cannot breach a fiduciary duty to another party. Sherwood v. Danbury Hospital, 278 Conn. 163, 195, 896 A. 2d 777 (2006). No fiduciary relationship exists between plaintiff and defendant, whose only connection to each other is that they were once married. Certainly, ex-spouses can hardly be deemed to stand in a fiduciary duty to each other. Accordingly, there can be no claim for breach of fiduciary duty.

5. Plaintiff Does Not Have A Cognizable Claim Under Connecticut Law For An Accounting.

To support an action for an accounting, there usually must be a fiduciary relationship between the parties. Mankert v. Elmatco Products, Inc., 84 Conn. App. 456, 460 (2004). Additionally, before a party may invoke the remedy of an accounting, he must allege a demand and refusal. Such v. Connecticut Bank & Trust Co., Inc., 5 Conn. App.457, 461-62 (1985). Since there is no fiduciary relationship between plaintiff and defendant, and plaintiff does not allege a demand and refusal, the accounting claim should be dismissed.

6. All of Plaintiff Alt's claims are barred by the Statutes of Limitations.

    A.   The Court Must Apply the New York Statute of Limitations.

The timeliness of plaintiff's claims is a procedural matter which must be determined by New York law. Where jurisdiction rests on diversity of citizenship, a federal court in New York

14

must apply New York's statute of limitations. <u>Stuart v. American Cyanamid Co.</u>, 158 F.3d 622,

626 (2d Cir. 1998); <u>Hughes v. LaSalle Bank, N.A.</u>, 419 F.Supp. 2d 605, 611 (S.D.N.Y. 2006).

    B.  <u>The Governing Statute of Limitations is Six Years From Breach.</u>

    The statute of limitations governing breach of a separation agreement is CPLR 213(2),

which provides that an action upon a contractual obligation or liability is six years. <u>Chayes v.</u>

<u>Chayes</u>, 28 A.D.3d 355, 814 N.Y.S.2d 115 (1st Dept. 2006). Such a claim accrues at the time of

breach of the separation agreement. <u>Chayes v. Chayes</u>, <u>supra</u>; <u>Rosenthal v. Rosenthal</u>, 172

A.D.2d 298, 568 N.Y.S.2d 603 (1st Dept. 1991), and contains no discovery accrual. A breach of

contract limitations period begins to run from the time when liability for wrong has arisen even

though the injured party may be ignorant of the existence of the wrong or injury. <u>Ely-Cruikshank</u>

<u>Co. v. Bank of Montreal</u>, 81 N.Y.2d 399 (1993). In this case, the purported breach occurred

upon the sale of the Water Group Investment on September 30, 1997. Moreover, even if plaintiff

could maintain a claim for breach of fiduciary duty, such a claim is, in any event, untimely.

Where monetary relief is sought rather than an equitable remedy, as plaintiff seeks here by

demanding compensatory damages, a three year limitations period applies to a breach of

fiduciary duty claim. <u>Loengard v. Santa Fe Indus., Inc.</u>, 70 N.Y.2d 262 (1987); <u>Malmsteen v.</u>

<u>Berdon, LLP</u>, 477 F.Supp. 2d 655, 666 (S.D.N.Y. 2007). Likewise, a six year statute of

limitations governs any claim for unjust enrichment, <u>Elliott v. Qwest Communications Corp.</u>, 25

A.D.3d 897, 808 N.Y.S.2d 443 (3d Dept. 2006), or an accounting, <u>In Re Meyer</u>, 303 A.D.2d 682,

757 N.Y.S.2d 98 (2d Dept. 2003).

    C.  <u>More than six years elapsed from accrual to interposition, rendering Plaintiff Alt's</u>

<u>claims time-barred.</u>

Plaintiff's claims most clearly accrued no later than September 30, 1997 (nearly four years prior to the last amendment to the Separation Agreement and the parties' divorce). Plaintiff did not commence the instant action until June 25, 2007 nearly ten years after accrual. Accordingly, the plaintiff's claim is manifestly time-barred.

7.    On the issue of estoppel, Alt argues that Greschner's (1) alleged failure to advise her of the sale of the WaterGroup Investment, or (2) the precise date that he liquidated the shares of the USF affiliate that he received at the September 30, 1997 sale, somehow operates to "estop" Greschner from asserting the statute of limitations.  Essentially, Alt argues that Greschner is estopped because he did not disclose the date of the alleged "breach".    Alt's own statement of her estoppel claim make it manifest that it has no legal merit.

To establish an entitlement to equitable estoppel, a plaintiff must make a showing that it was induced by fraud, misrepresentation, or deception *to refrain from commencing a timely action*. <u>Simculski v. Saeli</u>, 44 N.Y.2d 442, 450 (1978); <u>Kaufman v. Cohen</u>, 307 A.D.2d 113, 122, 760 N.Y.S.2d 157 (1st Dept. 2003). The purported egregious conduct by the defendant must be such that it can be "construed as calculated to lull the plaintiff *into postponing the commencement of the lawsuit*." <u>Dailey v. Mazel Stores</u>, 309 A.D.2d 661, 766 N.Y.S.2d 178 (1st Dept.2003) [Emphasis added].

Alt's claim is not that she was lulled into refraining from bringing suit– it is that the doctrine of "equitable estoppel" should operate to impose a "discovery rule" on the statute of limitations for breach of contract– a position for which there is simply no authority.

Alt is alleging that Greschner's "deception" served as a breach of the obligations of the Separation Agreement. Contrary to that contention, the fraud, deception or misrepresentation that

forms the basis for an application of equitable estoppel *must be a separate, later fraud distinct from the acts underlying the action itself.* Rizk v. Cohen, 73 N.Y.2d 98, 105-106 (1989); Lucas-Plaza Housing Develop. Corp., 23 A.D.3d 217, 805 N.Y.S.2d 9 (1st Dept. 2005) ["equitable estoppel does not apply where the misrepresentation or act of concealment underlying the estoppel claim is the same act which forms the basis of plaintiff's underlying substantive case of action"]; Kaufman v. Cohen, 307 A.D.2d 113, 122, 760 N.Y.S.2d 157 (1st Dept. 2003). Therefore, Greschner's supposed willful breach of contract cannot serve as the factual predicate for an equitable estoppel claim.

Moreover, to take advantage of equitable estoppel, the plaintiff's complaint must sufficiently plead facts which bring the plaintiff "within the shelter of the rule". Simcuski v. Saeli, 44 N.Y.2d 442,449 (1978). Analysis of the complaint [A 31-40] makes it manifest that the pleading makes no reference to facts which even remotely suggest the application of the doctrine.

8.   The Separation Agreement's provisions, with regard to the separate property of Ron Greschner are ambiguous and must be construed against Carol Alt.

It is axiomatic that a contract even a Separation Agreement where ambiguous, will be construed against the drafter. Murphy v. Murphy, 1995 WL 512690 (Conn. Super. 1995). *See,* Cantonbury Heights Condominium Association, Inc. v. Local Land Develop. LLC, 273 Conn. 724, 873 A.2d 898 (Conn. 2005).   The Separation Agreement is both ambiguous and contradictory, in that it declares the Water Group Investment to be the total separate property of Ron Greschner, and grants a contradictory right to 50% of any profits, in excess of $800,000 dollars, to Carol Alt.

The contradiction must be resolved against Carol Alt, whose attorney drafted it, and the Water Group Investment declared to be the separate property of Ron Greschner.

8.  <u>The Separation Agreement's reference to dollar amounts means dollar amounts calculated in American dollars.</u>

Inasmuch as Connecticut law controls, and the term "dollars" is utilized without further explanation, the plain meaning is American dollars.

9.  <u>Ron Greschner is entitled to recover the cost of his reasonable attorneys fees and disbursements.</u>

Pursuant to the plain language of Article XI ( C) of the Separation Agreement, defendant Greschner is entitled to recover the legal fees and costs incurred as a result of this action, in an amount to be determined by the Court upon motion and hearing.

## V. <u>ISSUES TO BE TRIED</u>

Counsel for Plaintiff and Defendant have a good faith disagreement as to the definition of the "issues to be tried".  Plaintiff's counsel believes that the listing should be only "factual" issues, while defendant believes that a bench trial should embrace both issues of law and issues of fact, if necessary.  For that reason, the Parties define the issues separately.

**<u>Plaintiff's Definition of the Issues to be Tried</u>**


**<u>Defendant's Definition of the Issues to be Tried</u>**

1.      Whether Carol Alt has a claim other than one for breach of Contract.

2.      Whether all of Carol Alt's claims are barred by the statute of limitations.

3.  What right, if any, does the Separation Agreement give to Carol Alt in the Water Group investment?

4.  If Carol Alt has a right to profits from the sale of the Water Group investment, is her right limited to fifty-percent of profits exceeding $800,000 American dollars?

5.  Did the profits to Ron Greschner Enterprises exceed $800,000 American dollars?

6.  What is the value, if any, of Carol Alt's claimed right to profits of the sale of the Water Group Investment?

## VI. **PLAINTIFF'S EXHIBITS**

No exhibit not listed below may be used at trial except (a) for cross-examination purposes or (b) if good cause for its exclusion from the pretrial order is shown.

| | | |
|---|---|---|
| Exhibit 1 | Separation Agreement annexed to the Complaint | |
| Exhibit 2 | Sellers Agreement | Greschner No. 058 – 086 |
| Exhibit 3 | One Page post closing reconciliation | Greschner No. 0644 |
| Exhibit 4 | Closing Agenda | Greschner No. 001 – 15 |
| Exhibit 5 | US Filter Prospectus | Greschner No. 049 – 57 |
| Exhibit 6 | Ron Greschner Enterprises, Inc. Ernst & Young Financial statement | Greschner No. 0621-626 |
| Exhibit 7 | Share Purchase Agreement with Exhibits | Greschner No. 0696 - 794 |
| Exhibit 8 | Shares of Water Group Companies | Greschner No. 803 – 822 |
| Exhibit 9 | Shares of US Filter | Greschner   858 – 882 |
| Exhibit 10 | Receipts and Acknowledgements | Greschner   884 – 896 |
| Exhibit 11 | Investor Representation letter | Greschner   991 – 923 |

Exhibit 12        Agreement                          Greschner  968 - 970

## VII.  **DEFENDANT'S EXHIBITS**

No exhibit not listed below may be used at trial except (a) for cross-examination purposes or (b) if good cause for its exclusion from the pretrial order is shown.

| EXHIBIT NO. | BATES PAGE NO. | DESCRIPTION |
|---|---|---|
| DX 1 | | SEPARATION AGREEMENT |
| DX 2 | 1 - 15 | CLOSING INDEX |
| DX 3 | 16 - 22 | SHARE PURCHASE AGREEMENT (SASINVEST) |
| DX 4 | 23-37 | AMALGAMATION DOCUMENTS |
| DX 5 | 58 - 96 | SELLER'S AGREEMENT |
| DX 6 | 97 - 117, 244 | STATUS DOCUMENTS - WATERGROUP |
| DX 7 | 696 - 794 | SHARE PURCHASE AGREEMENT WITH USF |
| DX 8 | 803 - 805 | ARVA WATERGROUP SHARES |
| DX 9 | 806 - 808 | INDUSTRIA WATERGROUP SHARES |

| DX 10 | 809 - 814 | GRESCHNER ENTERPRISES WATERGROUP SHARES |
|---|---|---|
| DX 11 | 815 - 817 | AURAMENKO WATERGROUP SHARES |
| DX 12 | 818 - 820 | REISE WATERGROUP SHARES |
| DX 13 | 821 - 822 | USF WATERGROUP SHARES |
| DX 14 | 823 - 857 | RELEASES and RESIGNATIONS - WG CAPITAL and WATERGROUP |
| DX 15 | 858 - 861 | ARVA USF SHARES |
| DX 16 | 862 - 865 | INDUCTRIA USF SHARES |
| DX 17 | 866 - 867 | GRESCHNER LOAN USF SHARES |
| DX 18 | 868 - 871 | GRESCHNER ENTERPRISES USF SHARES |
| DX 19 | 872 - 875 | SLOBODIAN USF SHARES |
| DX 20 | 876 - 879 | AURAMENKO USF SHARES |
| DX 21 | 880 - 883 | REISE USF SHARES |
| DX 22 | 884 - 895 | ACKNOWLEDGMENT OF RECEIPTS OF USF SHARES |
| DX 23 | 897 - 908 | USF SHARES RESTRICTION AGREEMENT |

| DX 24 | 909 | GRESCHNER ENTERPRISES CERTIFICATE OF NON U.S. OWNERSHIP |
| DX 25 | 924 - 948 | USF POOLING AGREEMENT |
| DX 26 | 949 - 957 | ESCROW AGREEMENT |
| DX 27 | 965 - 967 | FETTES GUARANTEE |
| DX 28 | 968 - 970 | GRESCHNER GUARANTEE |
| DX 29 | 974 - 978 | MacPHERSON FIRM REPRESENTATION |
| DX 30 | 979 -984 | KANUKA FIRM REPRESENTATION |
| DX 31 | 992 - 997 | MORRISON OPTION AGREEMENT |
| DX 32 | 998 - 1004 | TIDD OPTION AGREEMENT |
| DX 33 | 533 - 534 | GRESCHNER ENTERPRISES INVESTMENT |
| DX 34 | 537 - 538 | GRESCHNER ENTERPRISES LEDGER SHOWING INVESTMENT - 1983 |
| DX 35 | 621 - 626 | FINANCIAL STATEMENT - GRESCHNER 1998 |
| DX 36 | 629, 637, 654, 665 | LEGAL BILL |
| DX 37 | 627, 635, 655, 660 | ACCOUNTING BILL |

| DX 38 | 631 - 634 656, 664, 663 | INCOME TAX PAYMENTS |
|-------|-------------------------|---------------------|
| DX 39 | 1006 - 1030 | CANADIAN EXCHANGE RATES |
| DX 40 | | ADDENDUM to PROPERTY SETTLEMENT AGREEMENT |
| DX 41 | | DIVORCE DECREE |
| DX 42 | | DEMONSTRATIVE EXHIBIT OF PROFIT EARNED BY RON GRESCHNER ENTERPRISES FROM WATERGROUP INVESTMENT |
| DX 43 | | ALT ASSIGNMENT AGREEMENT |
| DX 44 | | LETTER TO FETTES @WATERGROUP RE: REMOVAL OF ALT NAME FROM LOAN |
| DX 45 | | LEDGER OF RGE SHOWING TRANSFER OF PROCEEDS TO RGE TO PAY TAXES |

## VIII.  STIPULATIONS AND OBJECTIONS WITH RESPECT TO EXHIBITS

Any objections not set forth herein will be considered waived absent good cause shown. Defendant's Objections.

1.      Defendant objects to PX 3, entitled "Post-closing" reconciliation, on the grounds of relevancy. Plaintiff refers to a document which represents an interim accounting of

the escrow monies, and cannot be utilized to establish anything else.

2.    Defendant objects to PX5, the USF Prospectus, as irrelevant.

## IX.  PLAINTIFF'S WITNESS LIST

The witnesses listed below may be called at trial.  No witness not identified herein shall be

permitted to testify on either party's case in chief absent good cause shown.

## X.  DEFENDANT'S WITNESS LIST

The witnesses listed below may be called at trial.  No witness not identified herein shall be

permitted to testify on either party's case in chief absent good cause shown.

Ronald Greschner

Don Fettes

## XI.  RELIEF SOUGHT

Defendant Ron Greschner seeks reimbursement of his legal fees and expenses caused by

the initiation and prosecution of this action.

Dated:        November 5, 2007

_____

U.S.D.J.

24

THE ROTH LAW FIRM, PLLC

By:_____
    Richard Roth (RAR 5538)

Attorneys for Plaintiff Carol Alt
545 Fifth Avenue, Suite 960
New York, New York 10017
(212)542-8882

LEDY-GURREN BASS & SIFF, LLP

By:_____
    Nancy Ledy-Gurren (NLG2186)

Attorneys for Defendant Ronald Greschner
475 Park Avenue South
New York, New York 10016