UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------X
CAROL A. ALT,

                Plaintiff,

    -against-

RONALD J. GRESCHNER,

                Defendant.
-------------------------------------------------X

Index No.: 07CIV6004

**AFFIDAVIT**

STATE OF NEW YORK    )
                                ) ss.:
COUNTY OF NEW YORK  )

    NANCY LEDY-GURREN, being duly sworn, deposes and says:

    1.    I am a member of the firm of Ledy-Gurren Bass & Siff, LLP, attorneys for defendant Ronald J. Greschner, and I submit this affidavit in support of the defendant Greschner's motion (1) to reargue this Court's order filed November 26, 2007, directing Greschner to "produce all the documents relating to this investment all the way through to the time when it was cashed out" [Exh. A]; and (2) granting summary judgment in favor of this defendant on the ground that Greschner has established his defenses as a matter of law, and plaintiff Alt has failed to offer a shred of evidence in support of either the timeliness of her claim or its substantive merit.

### Preliminary Statement

    2.    This is essentially a matrimonial action, in which plaintiff Alt maintains that her ex-husband, Ron Greschner, breached their Separation Agreement of January 13, 1997, by failing to purportedly "account" to her for profits allegedly realized in the sale of a Canadian investment. Plaintiff Alt can point to no good faith basis for commencing

this action (other than to have her lawyer suggest, in open court, that Ms. Alt's "friend's brother-in-law" informed her, some time this year, that Mr. Greschner sold the investment for $18 million). Her attorney has systematically challenged (again, unsupported by any evidence) the discovery produced by this defendant. Unfortunately, the plaintiff's counsel's hyperbolic accusations, and misunderstanding of the meaning of the documents produced, have had their effect on this Court. Plaintiff purports to want to know (a) when the WaterGroup investment was sold; (2) when that sale was "turned into cash"; and (3) how much cash Mr. Greschner realized. Indeed, as the statement of the facts will demonstrate, defendant *has submitted proof on each of these points*. Nonetheless, the Court, with the encouragement of the plaintiff's counsel, has miscontrued the meaning of the controlling documents, and issued an opinion stating as follows:

> Therefore, *I want to know when he [Greschner] realized cash money, and how much he realized* and if that requires tracing the funds back through several iterations of stock ownership, then so be it. I remind counsel for Mr. Greschner that this court was told last July that it would be the work of a moment to produce all the documents relating to this investment. It is now almost December, and I still do not have documents *enabling me to track this investment all the way through the time when it was cashed out. I am, frankly, beginning to smell a rat.* And I am perfectly willing to draw an adverse inference against Mr. Greschner's position if all the relevant documents (using my definition of relevance, not Mr. Greschner's) *are not produced immediately with immediately being defined as no later than December 10.*

Exh. A (Emphasis added).

3.   Plaintiff institutes this motion to reargue this Court's decision for the simple reason that Mr. Greschner has already produced the documents enabling the Court to

track the investment to cash– which occurred on April 9, 1999.  Indeed, it is respectfully submitted that this Court's statement -- "I am beginning to smell a rat" [Exh. A] -- bespeaks an unwarranted suspicion that is borne from a plain *misreading* of the documents produced, the brokerage statements of J.B. Hanauer.  Indeed, as clearly articulated by the Director of Operations of J.B. Hanauer [see annexed Sisti Affidavit], the brokerage records unquestionably establish *that Mr. Greschner turned the WaterGroup investment into cash on June 9, 1999– some eight years ago.*  For that reason, this Court's direction– that Greschner produce documents "through several iterations of stock ownership, if necessary", is impossible of compliance– unless this Court wishes Mr. Greschner to provide his entire financial history from 1999 to the present, for no reason other than that the plaintiff has demanded such.  Accordingly, the defendant here submits proof of this Court's misreading of the controlling documents, and asks that the Court reconsider its decision directing Greschner to produce additional documents, or "suffer" an adverse inference of some kind.

4.        Moreover, at this stage in the proceedings, Mr. Greschner has produced (1) documentation of the sale (September, 1997); (2) evidence of when the investment was "monetized" (1999); (3) proof of the amounts involved in both the sale and the turning of the USF shares into "cash"; and (4) evidence of the "profit" received by Greshner as a result of the investment.  Plaintiff Alt, on the other hand, has produced nothing but her own attorney's argument, and reliance on "triple hearsay", as the basis for claiming an "equitable estoppel".  Plaintiff has no good faith basis for this claim, and summary judgment should be awarded in favor of the defendant, and his legal fees reimbursed.

## Statement of Facts

5.   This action was initiated by plaintiff Carol Alt ["Alt"] by the filing of a summons and complaint [Exh. B] on or about June 25, 2007 . Thereafter, on or about August 24, 2007, defendant Greschner made a motion to dismiss, in lieu of answering, for lack of subject matter jurisdiction.   That motion has never been formally decided by this Court.

### A.   The Allegations

6.   The Court is well familiar with the allegations.   Alt claims that defendant Greschner, her ex-husband, breached certain provisions of the parties 1997 Property Settlement Agreement ("Separation Agreement")[Exh. C].   That Separation Agreement lists a Canadian investment, called the "WaterGroup", as Greschner's "separate property" [Exh. C, Schedule A, p.25].   The Agreement also states :

> 3.   With reference to the Water Group investment (account number) . . . .In the event of sale of this investment, the *profit* in excess of Eight Hundred Thousand ($800,000) Dollars shall be divided, and one-half (½) of the profit in excess of Eight Hundred Thousand ($800,000) Dollars shall be paid to Wife.

[Exh. A, Article IV, §A (3)]. (Emphasis added).

7.   Alt alleges– again, according to her attorney as stated at the last conference– that her friend, "John Saliano" [Pre-Trial Order, Exh. D, p. 25], whose "brother-in-law" is purportedly friends with Ron Greschner, informed Alt that Greschner had sold a "water company" for $18 million.   This triple hearsay statement represents the sole basis for Ms. Alt's suit.

8.   Mr. Greschner maintains that this action is wholly untimely, and that, in any event, the "profit" which he realized as a result of the WaterGroup investment (which

was owned by his Canadian Company, Ron Greschner Enterprises) was never greater than $800,000.

### B. The Document Exchange

9.   In late July, 2007, the Court conducted a conference with attorneys for both sides.  As counsel for Mr. Greschner, I indicated that Mr. Greschner had the documents "related to the sale" and that they would be produced.  Most respectfully (but contrary to this Court's November 26 decision), I never indicated to the Court that the production of the documents would involve "the work of a moment", nor would I have, for the reasons that (1) the documents of Ron Greschner Enterprises are held in Canada; (2) the sale occurred more than 10 years ago; and (3) I was aware that there were numerous documents contained within the "Closing Binder".  Indeed, at the time of the conference, I made a good faith determination that the production of the "Closing Binder" and financial records of Ron Greschner Enterprises, showing the amounts of (1) the USF shares and their value,  (2) money paid in taxes to the Canadian government, (4) initial investment, and (4) costs incurred for accounting, would be sufficient to convince Ms. Alt's lawyer that there was no basis for this action.   Most assuredly, I was wrong in that judgment, as Mr. Roth has launched an attack on Mr. Greschner's credibility (apparently effectively) , based on two thin facts: (1) the rumor spread by Ms. Alt's "friend", and (2) the fact that Mr. Greschner no longer has some financial documents from 10 years ago.  Indeed, even a brief look at the Separation Agreement [Exh. C] reveals that neither Ms. Alt nor Mr. Greschner were apparently pristine record-keepers, as none of the accounts or properties had reference numbers even at the time of signing, 1997.

10.     After some health difficulties in Mr. Greschner's family delayed disclosure, this Court issued an order, dated October 19, 2007 [Exh. E], directing Mr. Greschner to produce documents, and putting the matter down for trial on November 14, 2007.  The defense produced 695 documents– consisting of the referenced Closing Binder and financial records– on October 24, 2007, as evidenced by my letter to plaintiff's counsel [Exh. F], which outlined the facts, indicated that Ms. Alt's "anecdotal information" had been erroneous, and asked that the plaintiff's counsel reconsider the action.

11.     On November 5, 2007, Mr. Roth wrote a letter to the Court [Exh. G], in which he suggested that he had received "no" discovery.  Indeed, plaintiff's counsel– who admitted receiving the Closing Binder– suggested that there had been no "sale" because the purchase price was for a number of shares, valued at $49.18 per share, of U.S. Filter Corp.["USF"].  Mr. Roth stated that there was no "sale" until and unless the USF shares were sold by Greschner.  Plaintiff also served an additional Notice of Discovery and Inspection.

12.     On October 31, 2007, Greschner responded to the Second Notice of Discovery and Inspection, and produced hundreds of additional documents (Documents 696-1004)[Exh. H].  Once again, these seemed insufficient to plaintiff's counsel.

13.     A pre-trial order [Exh.D] was submitted to the Court, and a pre-trial conference was held.  The Court directed defense counsel to produce, by Thanksgiving, documents which revealed when the WaterGroup investment shares (the USF Shares), and thus the WaterGroup investment, was "monetized" (which the Court indicated was for its own interest, having not determined whether the sale of the WaterGroup shares for USF Shares, with a specific value, was a sufficient "sale" by

which to measure any interest of Alt).

14. Thereafter, by letter dated November 20, 2007 [Exh. I], the defense submitted what it knew to be evidence of the "cash out" of the USF Shares. Greschner produced the following:

> (A) A client statement from JB Hanauer & Co. [Bates ## 1035-1036 ][Exh. J], which reveals that on April 23, 1999, a total of 45,713 shares of US Filter were deposited to account number LPM-087227-82; and
>
> (B) A client statement from JB Hanauer & Co. [Bates ## 1038-1043][Exh. K], which reveals that on *June 9, 1999, a total of 45,713 shares of US Filter* were liquidated or "exchanged" into cash and thereafter utilized to purchase other stock/bond holdings [See page 1041 with asterisked transaction]. Accordingly, to the extent that it is relevant, Mr. Greschner did "liquidate" (or turn into cash) the shares, in 1999, some eight plus years ago; and
>
> ( C) 5 Federal Fund Money Transfer documents from Salomon Smith Barney [Exh. L], which reflect that Ron Greschner personally funded Ron Greschner Enterprise's payments of its tax obligations on Enterprise's sale of the stock in 1997.

15. Plaintiff's counsel nonetheless "objected", stating in a letter to the Court [Exh. M] that "Greschner has produced no evidence of a liquidation or sale of the investment", and stating– yet again, and unsupported by any evidence whatsoever -- that Mr. Greschner "is hiding something big". [Id.]

16. No doubt influenced by Mr. Roth's self-defined, but unsupported stance, this

Court ruled, by the order here under consideration, that Greschner's discovery was "woefully inadequate" and demanded that the defense produce additional documents showing "when he [Greschner] realized cash money". The defense maintains that the Order of November 26 is manifestly unfair, and it results from a mis-reading of the J.B. Hanauer statements [Exhibits J and K].

**B.    The Court Erroneously Interpreted the Controlling Evidence**

17.    Defendant Greschner respectfully requests reargument and reconsideration of this Court's November 26, 2007 order, on the basis that the Court erroneously interpreted the J.B. Hanauer documents. In fact, as is thoughtfully explained in the annexed affidavit of Joseph Sisti, the Director of Operations at J.B. Hanauer & Co., those records clearly, and *unequivocally establish that Mr. Greschner realized "cash money" for 45,713 shares of USF on June 9, 1999.* The defendant respectfully contends that the Sisti Affidavit establishes, beyond question, that a misperception of the controlling facts resulted in this Court's November 26 directive.

18.    For this reason, there is no cause for Mr. Greschner to "trace" the investment any further– whether he bought Treasury bonds, other stocks, or gambled the money away after he "monetized" it, should be of no moment to this case or Ms. Alt. Indeed, the Court's order of November 26– directing Mr. Greschner to produce additional documents–is impossible of compliance, for the simple reason that such documents have already been produced. The defendant suggests that it is pointless, burdensome and unnecessary to require the defendant (under a penalty of some sort of "adverse inference") to prove the "cash out" some other way, or to trace what he did with the cash thereafter. The clear facts make it manifest that Mr. Greschner is not hiding

"something big"– rather, Ms. Alt and her lawyer are on a giant fishing expedition-- premised on anecdotal information and obviously fueled by considerable post-marital animus-- that the plain facts can neither stop nor quell.   At this juncture, the Court must intervene to stop this "witch hunt", and order Greschner's discovery obligations at a close.

C.  **Summary Judgment Should Be Granted to the Defendant Greschner**.

19.   At this point in the action, defendant Greschner has produced all relevant evidence, and it establishes the following:

    a.    Ron Greschner Enterprises, Ltd. [RGE], a Canadian Company, made an investment in the WaterGroup company.

    b.    RGE sold its interest in the WaterGroup Company in September, 1997, through a contract of sale [Exh. 2 to Fettes Affidavit] in which it received 56,040 shares in USF.

    c.    Pursuant to the Contract of Sale, Ron Greschner Enterprises was required to contribute 5,604 shares into Escrow [Fettes Aff. Exh. 2 at 709, §2.5(a)(6).

    d.    After the contribution to Escrow, Ron Greschner Enterprises received 50,436 shares of USF [Fettes Aff., ¶9, Fettes Exh. 5];

    e.    Pursuant to certain option Agreements [See Fettes Aff., ¶¶8-11; Fettes Exh. 7], Ron Greschner Enterprises contributed 4,723 shares to Optionees.

    f.    When the Escrow (5,604) and Option Shares (4,723) are subtracted from the 56,040 share purchase price, Ron Greschner Enterprises received

45,713 shares of USF. [Fettes Aff. ¶ 15].

    g.    On April 23, 1999, Greschner deposited 45,713 shares in an account with J.B. Hanauer [Exh. J].

    h.    Those 45,713 were sold, and converted into cash, on June 9, 1999 [Exh. K and Sisti Aff.].

    i.    Greschner here provides, for the Court, an excel spreadsheet (revised for the correct amount of Option Shares), which accounts for the precise value of (1) the shares, in American dollars, on the date of sale, (2) the initial investment, in American dollars, and (3) the taxes and accounting fees paid by Ron Greschner Enterprises, together with the reference to each bate-numbered page that is in the defendant's exhibits as marked for trial. [Exh.N].

    k.    That spreadsheet more than establishes that the "profit" realized from the WaterGroup investment, by Ron Greschner, is less than $800,000.

20.    Plaintiff Alt has no evidence to the contrary, and the time for her attorney's hyperbolic– and tasteless–-accusations has passed.   Alt has no evidence of either the timeliness of her causes of action, or their merit.  For this reason, summary judgment should be granted in favor of the defendant Greschner.

WHEREFORE, the defendant Ronald J. Greschner respectfully requests that his motion be granted in all respects, and that (1) this Court grant reargument of its order dated November 26, 2007, and upon reconsideration, declare discovery of Mr. Greschner's finances to be at a close, (2) grant summary judgment in favor of defendant Greschner, (3) put this matter down for a hearing to determine Greschner's

reasonable legal fees incurred, and (4) grant such other, further and different relief as to this Court seems just and proper.

_____
NANCY LEDY-GURREN (2186)

Sworn to before me
this 10th day of December, 2007.

/s/ _____