# EXHIBIT I

### LEDY-GURREN BASS & SIFF, L.L.P.
ATTORNEYS AT LAW
475 PARK AVENUE SOUTH • NEW YORK, NY 10016
(212) 447-1111
FAX: (212) 447-6686

NANCY LEDY-GURREN
(212) 447-1105
EMAIL: NLEDYGURREN@LGB-LAW.COM

November 20, 2007

*Via Federal Express*

Hon. Colleen McMahon
United States District Court
Southern District of New York
500 Pearl Street, Room 640
New York, New York 10007

RE:   *Alt v. Greschner, 07CIV6004*

Dear Judge McMahon:

    As you are aware, we are the attorneys for defendant Ronald Greschner in the above-captioned action. We have been endeavoring to comply with your Honor's directives with respect to supplying evidence of the liquidation of the USF shares, and while we have significant evidence at this point, we still have been unable to locate income tax records for Ron Greschner Enterprises, Inc., which is the corporate entity (Canadian) which owned the shares in the Water Group Investment, and which was the seller of that interest.

    We enclose for the Court's and plaintiff's review, the following:

1. A client statement from JB Hanauer & Co. [Bates ## 1035-1036], which reveals that on April 23, 1999, a total of 45,713 shares of US Filter were deposited to account number LPM-087227-82. Mr. Greschner believes that this was shortly after the shares became "unrestricted", and acknowledges that his original receipt of shares was in the amount of 56,040 shares (what plaintiff's counsel insists on calling the "exchange" rather than a "sale"), at a listed price of $49.81 per share (Canadian dollars). That translates, on the date of sale (September 29, 1997), to $37.35 per share American dollars. The Court, and plaintiff, should note that on the date of deposit with JB Hanauer, the shares of USF were worth 31.50 American dollars per share, or approximately *six dollars less per share* than they were worth on the date of sale.

    The previous documentation we have provided with the Pre-Trial Order establishes that Ron Greshner Enterprises, Inc. was compelled to deliver 5,604 shares to escrow and 2650.48 shares to the Optionees Tidd and Morrison. We acknowledge that such would

LEDY-GURREN BASS & SIFF, L.L.P.

Hon. Coleen McMahon
United States District Court
Southern District of New York
November 20, 2007
Page 2

Re: *Alt v. Greschner*

  have reduced the 56,040 shares to 47,786. Given that the deposit to JB Hanauer was 45,713 shares, there must have been, *prior* to the deposit of these shares into JB Hanauer in April 1999, a liquidation of 2,053 shares. We are using best efforts to track down the precise date of this; we have had Ron Greschner Enterprises' records searched (there is nothing reflecting other stock certificates), and have requested that Mr. Fettes, who also was an investor, contact the attorneys who handled the stock transfers for the Water Group, in the hope that they have records which reflect the stock certificate transfers (we are assuming that Mr. Greschner should have received certificates, showing amounts of shares less than the 56,040 when the escrow and option shares were taken out). Unfortunately, we have been unable to accomplish that yet, but shall continue to do so (so as to "close the circle"), despite the fact that we are here producing evidence of *the latest date of liquidation*.

2. A client statement from JB Hanauer & Co. [Bates ## 1038-1043], which reveals that on *June 9, 1999, a total of 45,713 shares of US Filter* were liquidated or "exchanged" into other stock/bond holdings [See page 1041 with asterisked transaction]. Accordingly, to the extent that it is relevant, Mr. Greschner did "liquidate" the shares, in 1999, some eight plus years ago.

3. The WaterGroup Loan— which is represented on the Separation Agreement as Mr. Greschner's separate property, and for which Ms. Alt provided both a letter of waiver [DX44] and an assignment [DX43] – was repaid with 23,931 shares to Mr. Greschner personally (not to Ron Greschner Enterprises, Inc.) and those shares were deposited in Salomon Smith Barney Account Number 643-21450-16 430. A statement of those shares in such account [Bate # 1044] for the period March 29-April 1999 is attached. As we have stated previously, in view of the designation of the WaterGroup loan as separate property, and in view of Ms. Alt's assignment of any interest to Mr. Greschner, we do not see why any further "discovery" concerning the loan proceeds is required.

4. We also attach 5 Federal Fund Money Transfer documents from Salomon Smith Barney, which reflect that Ron Greschner personally funded Ron Greschner Enterprise's payments of its tax obligations on Enterprise's sale of the stock in 1997. These federal fund transfer documents show that wires to the Canadian Imperial Bank of Commerce [Ron Greschner Enterprise's bank account] were made during 1999 as follows:

  7/22/99  $70,461.25 American Dollars/ $110,183.36 Canadian Dollars [1045]
  8/25/99  $50,000 American Dollars/ $77,745.20 Canadian Dollars [1046]
  7/21/99  $100,000 American Dollars/ $155,667 Canadian Dollars [1047]

LEDY-GURREN BASS & SIFF, L.L.P.

Hon. Coleen McMahon
United States District Court
Southern District of New York
November 20, 2007
Page 3

Re: *Alt v. Greschner*

    10/22/99      $100,000 American Dollars/$153,857.60 Canadian Dollars [1048]
    4/11/00       $50,000 American Dollars/$76,065.60 Canadian Dollars [1049]

This totals $573,518.96 American Dollars, as revealed by the annexed documents showing the applicable exchange rates on those dates [1050-1052].

5.    As previously noted, we have been unable to find the income tax records of Ron Greschner Enterprises, but have, as Mr. Greschner's attorneys, made a request of the Canadian Revenue Agency. I have supplied the Canadian Revenue Agency with an authorization from Ron Greschner Enterprises, signed by Ron Greschner.

As we have indicated in our pre-trial order, the Separation Agreement is between Ron Greschner, individually, and Carol Alt, individually. Ron Greschner's interest in the WaterGroup investment was, by definition, the money he would receive from Ron Greschner Enterprise's sale of the WaterGroup investment. Ron Greschner Enterprises, not Ron Greschner individually, was required to pay tax on the sale to the Canadian government (Ron Greschner did not pay American taxes on the sale), and the Separation Agreement specifically stated that, to the extent that Mr. Greschner personally received "profit" over and above $800,000 on the WaterGroup investment, there was to be a sharing of the amount in excess. Plaintiff seems to take the position that, while Greschner Enterprises had to pay its taxes, and while Mr. Greschner could receive no "profit" from that investment other than money received after Greschner Enterprises had paid its rightful liabilities from the investment, Ms. Alt is somehow entitled to a portion of the "gross" amount (which, as an equitable distribution, would not be subject to tax). This, quite simply, turns both the Separation Agreement— and any principle of equity—on its head.

We would also seek the Court's permission to amend our pretrial order to include additional witnesses, should the Court allow plaintiff's witness identified as Mr. Saliano. As your Honor will recall, Mr. Roth disclosed to the Court that his proposed witness, John "Saliano", was the witness whose brother-in-law knew Mr. Greschner and had purportedly informed Ms. Alt that Mr. Greschner had sold his "family business" recently. This piece of information—while clearly hearsay and attenuated hearsay at that—is apparently the sole basis for the initiation of this lawsuit. Investigation has revealed that Mr. "Saliano" is actually John Sialiano, a radio disc jockey known as "Goomba Johnnie", who was sentenced for tax fraud in 1999 (article attached). We would plan to call Mr. Sialiano's brother-in-law, who has indicated a willingness to testify that he had no information concerning Mr. Greschner's interest in the WaterGroup, nor did he disclose any to Mr. Sialiano, despite inquiry.

LEDY-GURREN BASS & SIFF, L.L.P.

Hon. Coleen McMahon
United States District Court
Southern District of New York
November 20, 2007
Page 4

Re: *Alt v. Greschner*

We would also like the opportunity to have an initial hearing on the issue of the statute of limitations, as it is more than clear that the sale took place in 1997, the "liquidation" took place in 1999, and there is no evidence whatsoever to support any colorable claim of equitable estoppel under New York law or the federal doctrine of equitable toll.

We thank the Court for its consideration of the foregoing.

Respectfully,

NANCY LEDY-GURREN

cc:   Richard A. Roth, Esq.
      THE ROTH LAW FIRM, PLLC
      (Via E-mail and Regular Mail)