Case 1:07-cv-06004-CM    Document 25-14    Filed 12/11/2007    Page 1 of 5

# EXHIBIT M

# The Roth Law Firm, PLLC

545 Fifth Avenue, Suite 960
New York, NY 10017
Tel.: (212) 542 8882  Facsimile: (212) 542 8883

November 21, 2007

**By Hand**
Hon. Colleen McMahon
United States District Court, SDNY
Daniel Patrick Moynihan, United States Courthouse
500 Pearl St., Room 640
New York, NY 10007

Re:  <u>Carol Alt v. Ronald Greschner, Index No. 07 CIV 6004</u>

Dear Judge McMahon:

As you are aware, this firm represents Plaintiff Carol Alt ("Alt") in the above-captioned matter. At the most recent conference, you made it very clear that Defendant Ronald Greschner ("Greschner") was to, assume that a "share exchange" does not constitute a "sale" of the investment, and to therefore produce all documents relating to the investment from start to finish (most importantly, documents showing the details of when Greschner monetized the investment).[1]

This morning we received a few documents that, despite what counsel claims in her letter, most definitely do not comply with Your Honor's directive (we have enclosed the entirety of the brokerage account monthly statements produced), as Exhibit B herein, for the Court's easy reference). First and foremost, we still have not seen Greschner's (nor Ron Greschner Enterprises, Inc.'s) income tax records -- likely the single most important documents to show what exactly happened to the investment.[2] But putting that aside, the documents produced (as Bates Nos. 1035-1036 and 1041) do not even come close to showing what counsel would lead this Court to believe.

Documents Nos. 1035-1036 merely show that JB Hanauer & Co ("JBHC") "Received" 45,713 shares of United States Filter Corp. stock on April 23, 1999. Document No. 1041 -- which counsel represents is conclusive proof of some kind of liquidation -- states that on June 9, 1999, those 45,713 shares were "Delivered" and under "Price/Comments" the word "Exchanged" appears. "Delivered" in the brokerage industry mean precisely that -- they were delivered to some other entity. Note that there is no indication that the shares were "Sold" -- as was the case with the Kemper MNY MKT shares three entries below said United States Filter Corp. transaction. Greschner has produced no evidence of a liquidation or sale of the investment

---

[1] Enclosed as Exhibit A is the transcript of the November 7, 2007 appearance (see, "Transcript" at pgs. 11-13).
[2] Considering Greschner's tax records were kept by companies such as Ernst & Young and Deloitte & Touche, Greschner's "inability to locate" those documents, at this point, must draw a negative inference. We have spoken with both accounting firms, after serving them with subpoenas, and they have informed us that the documents must be obtained from the Canadian entities.

Hon. Colleen McMahon
November 21, 2007
Page 2

in question. In fact, by continuing to argue that an exchange is equivalent to a sale, counsel has blatantly ignored this Court's clear instructions to *assume* that an exchange is not equivalent to a sale for purposes of discovery. Greschner has now refused to comply with at least three (3) separate Orders of this Court! How long will Greschner continue to get away with his blatant noncompliance?

Indeed, this Court Ordered Mr. Greschner on October 19, 2007 to produce by October 23, 2007, "[e]very single piece of paper relating to the investment that is the subject of this litigation" or Your Honor would "issue an order to show cause why Mr. Greschner should not be held in civil contempt" (the October 19, 2007 Order is annexed hereto as Exhibit C). This Court reiterated that in our telephone conference. Notwithstanding Greschner's non-compliance with the October 19, 2007 Order, since the time of the court conference on November 7, 2007, Greschner has not produced one single document showing the actual sale of the investment in question. That is, we now know the shares were exchanged and we now know Greschner held the shares in 1999[3] -- but no documents have been produced to show when Greschner actually sold the investment (and at what price such shares were sold). *Not one document*.

Greschner's failure to adhere to Your Honor's clear directive and total failure to produce any tax records whatsoever is simply a continuation of Greschner's efforts to hide the realities of the investment from Alt, and more importantly, this Court. And this is exactly what Greschner has been doing all throughout this investment and into this litigation.

With regards to Greschner's concealment, the Court will hear evidence at trial that Greschner always kept Alt in the dark about the investment, claiming that he could not disclose information about the investment to her because he was privy to "confidential information" as a member of the company's Board of Directors. The Court will even hear testimony about how at the time of the "share exchange" Greschner specifically told Alt that she will have to wait ten years to sell the investment.[4] The truth is that Greschner totally controlled the investment and he asked Alt to trust him, that if the investment was sold, she would reap the benefits of her efforts in time and time again putting herself, her money and her career on the line for her brother-in-law's company -- Alt trusted Greschner and is now being punished for it. Greschner at all times intentionally concealed the details of the investment from Alt and -- in defiance of this Court -- he continues to do so.[5]

---

[3] The Court should recall that counsel originally represented the share were sold in 1997 and we no know they were not sold as late as April 1999 (although no documents have been produced to evidence such sale).
[4] Greschner indicated to Alt that the share exchange was for preferred or restricted stock.
[5] There is a clear pattern of conduct from Greschner of concealment, and that is why counsel's statute of limitations argument continues to be totally unavailing.

Hon. Colleen McMahon
November 21, 2007
Page 3

Moreover, counsel's newly created argument that, under the Separation Agreement, "Ron Greschner's interest in the WaterGroup investment was, by definition, the money he would receive from Ron Greschner Enterprises's sale of the WaterGroup investment" is most troubling and reeks of a fraud committed by Greschner against Alt in executing the Separation Agreement. That is, before this lawsuit commenced, Alt had no idea that "Ron Greschner Enterprises, Inc." was even involved in her WaterGroup investment! Now Greschner claims that Alt should only be entitled to Greschner's alleged profits realized from Ron Greschner Enterprises, Inc.?[6] That argument was never made to Alt, but is not even contained in Greschner's pre-trial order. Even more importantly, Greschner is playing games, and it is not fair. For counsel to argue that "principles of equity" favor Greschner in this case is not only erroneous, it is insulting.

Regarding the loan issue, counsel produced documents already produced (and marked as an exhibit) and tries to argue that somehow Alt should be precluded from arguing the issue at trial. We will not argue with counsel at this time, but suffice it to say that Alt will present compelling evidence at trial to prove that the loan was at all times intended to be a part of the "WaterGroup investment." Notwithstanding, the only new document produced on the issue (Bates No. 1044)[7] merely shows that Greschner held the stock in question as of April 1999 -- no document was produced to show when Greschner sold such stock (which is what was ordered to be produced).[8] In fact, counsel's statement that "we do not see why any further 'discovery' concerning the loan proceeds is required" once again fails to consider that Your Honor already ordered that such documents be produced (three times). Counsel seems to believe she is in negotiations with Your Honor! It is outrageous.

Finally, regarding the testimony of John Saliano, as I previously indicated to Your Honor, Saliano's testimony is not hearsay because it will not be used for the truth of the matter asserted. The testimony will merely be used to show Alt's state of mind when Saliano told her about Greschner's alleged sale of a "family business." As such, Greschner's desire to call Saliano's brother-in-law to testify that "he had no information concerning Mr. Greschner's interest in the WaterGroup, nor did he disclose any to Mr. Saliano" is both misplaced and irrelevant.

Putting aside Greschner's failure to abide by Your Honor's first few Orders, this most recent non-compliance is inexcusable. It would have been one thing for counsel to ask for more time to produce all of the documents ordered to be produced, but for counsel to produce totally deficient documents and argue that such documents "prove" the sale in question is intolerable. We have been trying for many months to obtain documents to show when the investment was monetized (and for what amount of money) and *nothing* has been produced to make such a showing. The only reasonable assumption to be drawn from Greschner's non-compliance is that

---

[6] The tax records are most important because Alt has no way of knowing how, if at all, Greschner used his company to further conceal the investment's sale.

[7] Bates No. document 1044 states that such document is page "2 of 2" but page "1 of 2" has been withheld.

[8] To the contrary, Greschner has the audacity to produce one page of one account statement, which shows his portfolio holding as of April 1999 -- showing he **held** the stock on that date and does not identify when it was sold.

Hon. Colleen McMahon
November 21, 2007
Page 4

he is hiding something big. At this point, we do not know how to proceed and respectfully ask the Court for another conference call to solve this dilemma.

    We thank the Court for its time and consideration in this matter and sincerely apologize for our need to involve the Court once again on what should have been a non-issue.

                                  Respectfully Submitted,

                                  Richard A. Roth

cc:    Nancy Ledy-Gurren, Esq.
        *Counsel for Defendant*