UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------X
CAROL A. ALT,

                Plaintiff,          Index No. 07 CIV 6004

  -against-                      **AFFIDAVIT**

RONALD J. GRESCHNER,

                Defendant.
-------------------------------------------------X

IN CANADA, IN THE PROVINCE

OF SASKATCHEWAN, CITY OF REGINA:

    DON FETTES, being duly sworn, deposes and says:

1.    I am over the age of 18 and am a citizen and resident of Canada. I offer this affidavit, based on personal knowledge, to (1) document my search for documents of Ron Greschner Enterprises Ltd. ["RGE"], a Canadian company that was owned by defendant Ron Greschner; and (2) offer my information and knowledge to the Court with respect to the shares "given up", by Ron Greschner Enterprises to two Optionees. I do so as to assist Mr. Greschner, and his counsel, in accounting for the precise number of shares secured by RGE from sale of the WaterGroup investment.

2.    Mr. Greschner's counsel, Nancy Ledy-Gurren, initially contacted me after she had received the closing statement relative to the Share Purchase Agreement [DX7] and related documents from Mr. Greschner, in the hope that, as a result of my personal involvement, I might be able to share insight into the details of the transaction that Mr. Greschner did not have, or did not remember. The Court should be aware of the following facts: (1) I have personal knowledge concerning the RGE WaterGroup investment, and its disposition some

10 years ago; (2) I introduced the investment opportunity to Mr. Greschner who is my brother-in-law, and (3) I independently participated in the sale of WaterGroup, which occurred some ten years ago. I was the President of WaterGroup at the time of the sale, and am currently the Executive Vice-President of WaterGroup, which is currently owned by Culligan International, Inc.

A. **My Initial Search For Records**

3. At the request of Mr. Greschner and his attorney (made in October 2007, just prior to Greschner's response to Plaintiff's Second Request for Documents), I searched the records of Ron Greschner Enterprises, Ltd., which are kept at Gisella Greschner's home office in Canada. I was provided with a copy of the plaintiff's "Second Request for Documents" and endeavored to search for, and locate documents responsive to those requests. RGE records are kept and maintained by Gisella Greschner, Mr. Greschner's mother (my mother-in-law). Mrs. Greschner, who is in her eighties, has been recuperating from open-heart surgery, and could not make the search herself.

4. I reviewed all of those records personally. Ron Greschner Enterprises, Ltd. has been an inactive company for some time, and the documents reveal that it is an inactive company. The records of Ron Greschner Enterprise's sale of the "Water Group" investment consist of the Sale and Purchase agreement and the closing documents that have been delivered to Mr. Greschner's attorneys (and, according to Ms. Ledy-Gurren, have been bate-stamped and produced to plaintiff's counsel).

5. I here report the results of that portion of my search that did not reveal any documents:

    a. I did not find any documents which evidenced Ron Greschner Enterprises' disposition of the United States Filter Corporation shares.

b. I did not find any documents evidencing any current ownership of any shares by Ron Greschner Enterprises, Ltd. or Mr. Greschner personally, which was not surprising as, to my knowledge, there is no such continuing ownership. As a business advisor to Mr. Greschner, I was aware, that sometime in 1999, Ron Greschner Enterprises disposed of any and all USF shares.

c. Ron Greschner Enterprises Ltd. is, and has been for at least 6-7 years, an inactive company. I located no copies of income tax returns within its records, although I have been informed that a request to the Canadian Revenue Service has been made by Mr. Greschner, through his attorneys.

d. While there are some scattered bank records within the Ron Greschner Enterprises's records, there were no checks or bank statements that referred to or related to the sale of the Water Group Investment (e.g., showing any receipt of proceeds from the sale). There were copies of checks showing the payment of taxes to the Canadian revenue authorities, which have been produced to Mr. Greschner's counsel. Upon information and belief, the Ron Greschner Enterprises's shares were initially deposited with a brokerage entity (the precise current identity of which cannot be definitively stated) with a broker by the name of Samantha Addonizio [see discussion ¶11, *infra*], and afterwards were released to other brokers for the individual Shareholders. However, I could find no bank records which reflect this.

e. I did not, despite diligent search, locate any financial statements of Ron Greschner Enterprises.

7. In order for me to assist Mr. Greschner's counsel with the analysis for the Court, Ms. Ledy-Gurren has supplied me with copies of several items produced for the Court: (a) the proposed defendant Greschner Exhibit DX42 (which has been explained is a demonstrative

exhibit of profit earned by RGE from the WaterGroup Investment)[Exh. 1]; (b) the Sale Agreement [Exh. 2]; (c) the Records of J.B. Hanauer [Exh. 3], which reflect that RGE received, into the account, 45,713 shares of USF, and sold such USF shares for cash in June 1999 [See Sisti Affidavit]; (d) the Option Agreements to Morrison and Tidd contained in the Closing Statement [Exhs. 4 and 5, respectively]; and (e) the stock certificate issued to Ron Greschner Enterprises from the WaterGroup sale [Exh. 6].

**B.   The "Problem" with the Number of Shares Delivered to JB Hanauer**

8.   Counsel for Mr. Greschner had noticed that the 45,713 shares delivered to RGE's account in April, 1999 [Exh. 3] represented less than the amount of shares received at the sale, less the Escrow and Option shares, and asked that I review these records again to determine whether the Option share and the Escrow Share amounts were accurate. I did so.

   (1)   **The Limits of the "Option" Agreements with Morrison and Tidd**

9.   During my review, I recognized that the amount of Option shares Ron Greschner Enterprises had to give up was previously inaccurately reported by Greschner, primarily because neither he nor his counsel recognized that the Option Agreements I had previously forwarded to them [Exhs. 5 and 6] were Option Agreements *solely between* Industria Capital Inc. (my company) and Morrison and Tidd, and thus reflect *only the shares that Industria contributed to those individuals*. I have been informed by Ms. Ledy-Gurren that, previously, she and Greschner had assumed that the shares mentioned in those agreements were the totality of the "Option Shares", and, in calculating RGE's contribution to the Option Shares, they simply took RGE's total percentage interest (21.25) in the WaterGroup, and multiplied it by the total number of Option Shares reflected in those Option Agreements [10,742 shares to Morrison (Exh. 5, p. 993) and 1,992 shares to Tidd (Exh. 6, p. 999)]. This led to

Greschner's representation to the Court that he had contributed 2650.48 shares to the Optionees (see Exh. 1, DX42)—which would have left him with 47,786 shares. There seemed to be, then, some 2000-odd shares "missing" from the trail, inasmuch as RGE's total shares deposited with JD Hanauer was 45,713.

10.     I explained to Mr. Greschner and his counsel that those Option Agreements [Exhs. 4 and 5] represent only the Option Shares *contributed by Industria*, and that there were Option Agreements between Ron Greschner Enterprises and Morrison and Tidd. I performed a search of both RGE's records and my own personal records to determine whether I could locate any such agreement. I personally searched Ron Greschner Enterprise's records and could not locate any Option Agreement between RGE and Morrison or Tidd. Mr. Greschner reports that he could not find such Agreement, although I know that such Agreement existed.

11.     However, what I did find, in my personal records, was a handwritten "accounting" of the Option Shares contributed to Morrison and Tidd by those Shareholders of the WaterGroup obligated to do so. I here attach that record [Exh. 7], which (1) is in the handwriting of Joe Morrison, who was WaterGroup's Vice-President of Finance and one of the Optionees at the time of the sale, (2) was written at the time of the calculations were performed to permit the exercise of the Options (back in 1997), and (3) which I have kept in the regular course of business in my personal records. Additionally, Exhibit 7 refreshes my personal recollection (although my recollection is "approximate") as to the number of shares contributed by Industria and Ron Greschner Enterprises, as well as those other WaterGroup Shareholders obligated to contribute.

12.     When I located this document, I immediately recognized it and noted Samantha Addonizio's name and telephone number on it. I remembered her as the contact person, at

a brokerage house utilized by all Shareholders. I recall, that in 1997, that brokerage house was called "DMG" (which I believed stood for Deutsche Morgan Grenfel). I attempted to call that number last week, and the number was answered by a recording that indicated that such number was a "non-working" number of Deutsche Bank. I then called Deutsche Bank, but was informed that Ms. Addonizio is not an employee of that company. I then called a brokerage firm called Morgan Stanley (which I thought might have been part of DMG), but I was informed that they had not had such an involvement.

13. The Court will note that Exhibit 7 also comports with the Option Agreements between Industria and Tidd/Morrison [Exh. 4 and 5]: Industria contributed 10,742 Shares to Morrison (Exh. 7, line 1) and 1992 shares to Tidd (Exh. 7, line 6), for a total of 12,734 shares. Exhibit 7 (my handwritten notes) also reveals that Ron Greschner Enterprises contributed 3984 shares to Morrison, and 739 shares to Tidd, for a total of 4,723 shares contributed to the Optionees (rather than the 2650 presumed previously).

2.   **The USF Shares Issued to Greschner and Those Put in Escrow**

14.   The Sale Agreement [Exh. 2] also reflects that Ron Greschner Enterprises was to receive 56,040 shares of USF by virtue of the sale [Exh. 2, pp. 709, §2.5(a)(6)], "provided that 5,604 of the said shares shall be represented by a separate certificate which the Seller will endorse in blank and deliver to the Buyer's counsel to be held in Escrow described in Section 7.6.". Accordingly, the stock certificate [Exh. 6], reflecting those USF shares (restricted for a time), initially delivered at Closing to Ron Greschner Enterprises showed 50,436 (56,040 minus 5604). That Stock Certificate [Exh. 6] has been annexed to the trial exhibits as DX 18. Again, it reflects 50,436 shares to Ron Greschner Enterprises.

3.   **The RGE Shares Less the Escrow and Option Shares**

15. Since the time that Mr. Greschner secured the JB Hanauer records [Exh. 3], it has been clear that there were 45,713 shares deposited with such brokerage firm. The corrected "Option Shares" contribution by Greschner Enterprises, completes the accounting of those shares:

   a. The Sale Agreement [Exh. 2] reflects a purchase price of 56,040 USF Shares to Ron Greschner Enterprises..

   b. The Sale Agreement demonstrates that 5,604 shares had to be put in Escrow. [Exh. 2, pp. 709, §2.5(a)(6)].

   c. The subtraction of the Escrow shares (56,040-5604), left 50,436 USF shares, precisely the amount issued to RGE in the Share Certificate [Exh.6]

   d. When the correct amount of the Option Shares, 4,723, is subtracted from the 50,436, there are 45,713 shares remaining, the precise amount deposited by RGE into the JB Hanauer account [Exh. 3].

16. More the affiant sayeth not.

_____
DON FETTES

/s/