UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK                    Index No. 07CIV6004

---

CAROL ALT,

                Plaintiff

                            -against-

RONALD J. GRESCHNER,

                Defendant

---

# MEMORANDUM OF LAW OF DEFENDANT GRESCHNER IN SUPPORT OF MOTION FOR REARGUMENT AND SUMMARY JUDGMENT

 

LEDY-GURREN BASS & SIFF
By: Nancy Ledy-Gurren
Attorneys for Ronald Greschner
475 Park Avenue South
New York, New York 10016

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
CAROL A. ALT,

                                                Index No.: 07CIV6004

                      Plaintiff,

-against-

RONALD J. GRESCHNER,

                      Defendant.
-------------------------------------------------------X

## MEMORANDUM OF LAW OF DEFENDANT GRESCHNER IN SUPPORT OF MOTION FOR REARGUMENT AND SUMMARY JUDGMENT

### Statement of Facts

The facts of the controversy and the documentary evidence are fully detailed in the annexed affidavits of Nancy Ledy-Gurren, Don Fettes and Joseph Sisti, and need not be reiterated herein. At this juncture, it is sufficient to note that defendant Greschner here moves for (1) reargument of this Court's November 26, 2007 order [Exh. A][1] directing Greschner to "produce all the documents re lating to this investment all the way through to the time when it was cashed out" [Exh. A]; and (2) granting summary judgment in favor of this defendant on the ground that Greschner has established his defenses as a matter of law, and plaintiff Alt has failed to offer a shred of evidence in support of either the timeliness of her claim or its substantive merit.

---

[1] Exhibits utilizing "letter designations" refer to those Exhibits annexed to the affidavit of Nancy Ledy-Gurren. The numbered exhibits of the Sisti and Fettes affidavits are referred to by the witness's name and the number.

## POINT I

## THIS COURT SHOULD GRANT REARGUMENT OF ITS NOVEMBER 26, 2007 ORDER

Local Civil Rule 6.3 provides, in pertinent part, as follows:

> A notice of motion for reconsideration or reargument shall be served within ten (10) days after the docketing of the court's determination of the original motion. There shall be served with the notice a memorandum setting forth concisely the matters or controlling decisions which counsel believes the court has overlooked.

Local Civ. Rule 6.3, Southern District of New York (2007). In making a motion for reargument, then, it behooves the proponent to demonstrate that there was a controlling principle of law, or factual matter, overlooked by the Court on the underlying motion. Shrader v. CSX Transportation, Inc. 70 F.3d 255, 256-57 (2d Cir. 1995); Babaev v. Grossman, 2007 WL 3197393 Slip. Op. (E.D.N.Y. 2007); Inner City Press/Community on the Move v. Board of Governors of Federal Reserve System, 2005 WL 2560396 (S.D.N.Y. 2005); Bell Sports, Inc. v. System Software Assocs., 71 F.Supp.2d 121, 126 (E.D.N.Y. 1999). Indeed, the grant of reargument rests in the sound discretion of the Court, and should be granted when a factual matter has been overlooked, or there is a demonstrated need to correct clear error or prevent manifest injustice. Babaev v. Grossman, *supra.*

This is precisely the case here. At the pre-trial conference, this Court directed Greschner to produce evidence which would establish when he "cashed out" the investment which is the subject of this lawsuit. Indeed, Greschner did so, by providing this Court with his counsel's letter dated November 20, 2007 [Exhibit I] and two

statements of the brokerage house J.B. Hanauer [Exhibits J and K]. Those documents established that the USF shares (which had been received by Ron Greschner Enterprises in exchange for its WaterGroup investment in September, 1997) were exchanged for cash on June 9, 1999. Nonetheless, by decision dated November 26, this Court determined that such discovery was "woefully inadequate" and stated:

> Therefore, *I want to know when he [Greschner] realized cash money, and how much he realized* and if that requires tracing the funds back through several iterations of stock ownership, then so be it. I remind counsel for Mr. Greschner that this court was told last July that it would be the work of a moment to produce all the documents relating to this investment. It is now almost December, and I still do not have documents *enabling me to track this investment all the way through the time when it was cashed out. I am, frankly, beginning to smell a rat.* And I am perfectly willing to draw an adverse inference against Mr. Greschner's position if all the relevant documents (using my definition of relevance, not Mr. Greschner's) *are not produced immediately with immediately being defined as no later than December 10.*

Exh. A (Emphasis added). It is respectfully submitted that this Court, in reaching that determination, miscontrued the controlling evidence produced, i.e., the J.B. Hanauer statements. Annexed to the moving papers is the Affidavit of Joseph Sisti, the Director of Operations of J.B. Hanauer, which explains that the clear meaning of those documents is that Greschner received "cash money" for those USF shares on April 9, 1999. There certainly can be nothing more clear than J.B. Hanauer's own representations as to what its records state. For this reason, the defendant maintains that it has established that the November 26 Order of this Court was based on a controlling factual matter (the issue of the "cash out" on June 9, 1999) which was overlooked by this Court. Reargument should be granted and, upon reconsideration,

this Court should determine that the date of the "cash out" has been definitively established, and that defendant's discovery obligations are at an end.

This motion, initiated on December 10, 2007, is timely. The Court will note that its order was docketed on November 26, 2007. A notice for reargument or reconsideration should be served within ten (10) days after docketing. However, pursuant to Fed. R. Civ. P. 6(a), when the time period prescribed or allowed is less than 11 days, "intermediate Saturdays, Sundays, and legal holidays shall be excluded in the computation". Fed. R. Civ. P. 6(a). This rule applies to the local rules, and renders a motion for reargument timely if it was made within ten (10) days, excluding the intervening Saturdays and Sundays. Lebron v. Sanders, 2004 WL 1459520 (S.D.N.Y. 2004). Utilizing this method, the motion is timely if, as has occurred, this application was served by December 10.

## POINT II

## THE STANDARD FOR SUMMARY JUDGMENT

Rule 56(b) provides that "[a] party against whom a claim . . . is asserted . . . may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." The court must grant the motion "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FRCP 56(c).

A motion for summary judgment serves a salutary purpose: "to isolate and dispose of factually unsupported claims." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party has the initial burden of identifying evidence that

4

demonstrates the absence of a genuine issue of material fact. Id. Once the moving party meets its burden under Rule 56(c), the burden shifts to the nonmoving party to demonstrate that there exists a genuine issue of material fact. Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 585-86 (1986). If, when "[v]iewing the evidence produced in the light most favorable to the nonmovant . . . a rational trier could not find for the nonmovant, then there is no genuine issue of material fact and entry of summary judgment is appropriate." Binder v. Long Island Lighting Co., 933 F.2d 187, 191 (2d Cir. 1991).

Thus, to defeat a motion for summary judgment, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Industrial Co. v. Zenith Radio Corp., supra, 475 U.S. at 586. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (citations omitted). Moreover, "an adverse party may not rest upon the mere allegations . . . of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." FRCP 56(e). Application of this well-established standard mandates summary judgment in favor of the defendant Greschner.

## POINT III

### ALT'S ONLY COGNIZABLE CLAIM, UNDER CONNECTICUT LAW, IS FOR BREACH OF CONTRACT

Plaintiff's complaint pleads a number of causes of action, all of which arise under the Separation Agreement [Exh. C]. The text of that Agreement establishes that

5

Connecticut law governs this controversy (substantively) and that plaintiff's only cognizable cause of action is for breach of contract.

**A.     The Separation Agreement is controlled by Connecticut Law.**

Inasmuch as the Separation Agreement provides that the agreement is to be governed by Connecticut law, that state's substantive law governs whether plaintiff has viable claims for: (1) breach of the contract (First Cause of Action), (2) unjust enrichment (Second Cause of Action), (3) breach of fiduciary duty (Third Cause of Action) and, (4) an accounting (Fourth Cause of Action). This result is mandated New York's choice of law rules which must be applied, in actions based on diversity, by federal courts sitting in New York. Woodling v. Garrett Corp., 813 F.2d 543 (2d Cir. 1987). Where the subject agreement between the parties contains a choice of law provision for a jurisdiction which has a substantial relationship to the parties, the law of New York requires that such provision be honored with respect to all substantive matters. Id. Accordingly, given the relationship of the state of Connecticut to the parties and their marriage, the choice of law provision electing Connecticut law must be enforced.

**B.     Plaintiff's Only Legally Cognizable Claim Is for Breach of Contract**

Separation agreements are construed and enforced as contracts and the remedies are no other or different than the remedies provided by law for the breach of any other contract. Lasprogato v. Lasprogato, 127 Conn. 510, 514, 18 A.2d 353 (1941); see also, Harvey v. Daddona, 29 Conn. App. 369, 615 A.2d 177 (1992). The

only claim which plaintiff may assert for breach of the Property Settlement Agreement, therefore, is one sounding in breach of contract.

### C. Plaintiff Does Not Have A Cognizable Claim for Unjust Enrichment

Unjust enrichment is a common-law doctrine that provides restitution when justice requires. United Coastal Industries, Inc. v. Clearheart Construction Company, 71 Conn. App. 506, 511-512, 802 A.2d 901 (2002). It is a legal doctrine to be applied when no remedy is available pursuant to a contract. Id. Since plaintiff seeks to recover based on a breach of the Separation Agreement, and the only source of any right to profits from the sale of the Water Group investment is the Separation Agreement, she is precluded from maintaining a claim for unjust enrichment.

### D. Plaintiff Does Not Have A Cognizable Claim For Breach Of Fiduciary Duty

Under Connecticut law, a fiduciary relationship is defined as one characterized by a unique degree of trust and confidence between the parties, one of whom has superior knowledge, skill or expertise and is under a duty to represent the interests of the other. Weisleman v. Hoeniger, 103 Conn. App. 591, 596, 930 A.2d 768 (2007) [citing *Murphy v. Wakelee*, 247 Conn. 396, 721 A2d 1181 (1998)]. Absent the existence of a fiduciary relationship between the parties, it is axiomatic that a party cannot breach a fiduciary duty to another party. Sherwood v. Danbury Hospital, 278 Conn. 163, 195, 896 A. 2d 777 (2006). No fiduciary relationship exists between plaintiff and defendant, whose only connection to each other is that they were once married. Certainly, ex-spouses can hardly be deemed to stand in a fiduciary duty to each other. Accordingly, there can be no claim for breach of fiduciary duty.

E.  **Plaintiff Does Not Have A Cognizable Claim
    Under Connecticut Law For An Accounting**

To support an action for an accounting, there usually must be a fiduciary relationship between the parties. Mankert v. Elmatco Products, Inc., 84 Conn. App. 456, 460 (2004). Additionally, before a party may invoke the remedy of an accounting, he must allege a demand and refusal. Such v. Connecticut Bank & Trust Co., Inc., 5 Conn. App.457, 461-62 (1985). Since there is no fiduciary relationship between plaintiff and defendant, and plaintiff does not allege a demand and refusal, the accounting claim should be dismissed.

For all of these reasons, this Court should grant summary judgment on all of the causes other than the one for breach of contract, on the ground that there is a failure to state a cognizable cause of action. As to the breach of contract claim, it should be dismissed as both untimely and without merit.

## POINT IV

## PLAINTIFF'S CLAIM IS MANIFESTLY UNTIMELY

A.  **The Court Must Apply the New York Statute of Limitations**.

The timeliness of plaintiff's claims is a procedural matter which must be determined by New York law. Where jurisdiction rests on diversity of citizenship, a federal court in New York must apply New York's statute of limitations. Stuart v. American Cyanamid Co., 158 F.3d 622, 626 (2d Cir. 1998); Hughes v. LaSalle Bank, N.A., 419 F.Supp. 2d 605, 611 (S.D.N.Y. 2006).

### B. The Governing Statute of Limitations is Six Years From Breach.

The statute of limitations governing breach of a separation agreement is CPLR 213(2), which provides that an action upon a contractual obligation or liability is six years. Chayes v. Chayes, 28 A.D.3d 355, 814 N.Y.S.2d 115 (1st Dept. 2006). Such a claim accrues at the time of breach of the separation agreement. Chayes v. Chayes, supra; Rosenthal v. Rosenthal, 172 A.D.2d 298, 568 N.Y.S.2d 603 (1st Dept. 1991), and contains no discovery accrual. A breach of contract limitations period begins to run from the time when liability for wrong has arisen even though the injured party may be ignorant of the existence of the wrong or injury. Ely-Cruikshank Co. v. Bank of Montreal, 81 N.Y.2d 399 (1993). In this case, the purported breach occurred upon the sale of the Water Group Investment on September 30, 1997. Moreover, even if plaintiff could maintain a claim for breach of fiduciary duty, such a claim is, in any event, untimely. Where monetary relief is sought rather than an equitable remedy, as plaintiff seeks here by demanding compensatory damages, a three year limitations period applies to a breach of fiduciary duty claim. Loengard v. Santa Fe Indus., Inc., 70 N.Y.2d 262 (1987); Malmsteen v. Berdon, LLP, 477 F.Supp. 2d 655, 666 (S.D.N.Y. 2007). Likewise, a six year statute of limitations governs any claim for unjust enrichment, Elliott v. Qwest Communications Corp., 25 A.D.3d 897, 808 N.Y.S.2d 443 (3d Dept. 2006), or an accounting, In Re Meyer, 303 A.D.2d 682, 757 N.Y.S.2d 98 (2d Dept. 2003).

## C. The Statutory Time Has Elapsed

Plaintiff's claims most clearly accrued no later than September 30, 1997 (nearly four years prior to the last amendment to the Separation Agreement and the parties' divorce), *or at the latest in June 1999, when the investment was "cashed out"*. Plaintiff did not commence the instant action until June 25, 2007 nearly eight to ten years after accrual. Accordingly, the plaintiff's claim is manifestly time-barred.

Alt has suggested that there should be an "estoppel", contending that Greschner's (1) alleged failure to advise her of the sale of the WaterGroup Investment, or (2) the precise date that he liquidated the shares of the USF affiliate that he received at the September 30, 1997 sale, somehow operates to "estop" Greschner from asserting the statute of limitations. In fact, the proof has clearly established that Greschner "liquidated" the investment in April, 1999, some eight years ago. Essentially, Alt argues that Greschner is estopped because he did not disclose the date of the alleged "breach". Alt's own statement of her estoppel claim make it manifest that it has no legal merit.

To establish an entitlement to equitable estoppel, a plaintiff must make a showing that it was induced by fraud, misrepresentation, or deception *to refrain from commencing a timely action*. Simculski v. Saeli, 44 N.Y.2d 442, 450 (1978); Kaufman v. Cohen, 307 A.D.2d 113, 122, 760 N.Y.S.2d 157 (1st Dept. 2003). The purported egregious conduct by the defendant must be such that it can be "construed as calculated to lull the plaintiff *into postponing the commencement of the lawsuit.*" Dailey v. Mazel Stores, 309 A.D.2d 661, 766 N.Y.S.2d 178 (1st Dept.2003) [Emphasis added].

Alt's claim is not that she was lulled into refraining from bringing suit– it is that the doctrine of "equitable estoppel" should operate to impose a "discovery rule" on the statute of limitations for breach of contract– a position for which there is simply no authority.

Alt is alleging that Greschner's "deception" served as a breach of the obligations of the Separation Agreement. Contrary to that contention, the fraud, deception or misrepresentation that forms the basis for an application of equitable estoppel *must be a separate, later fraud distinct from the acts underlying the action itself.* Rizk v. Cohen, 73 N.Y.2d 98, 105-106 (1989); Lucas-Plaza Housing Develop. Corp., 23 A.D.3d 217, 805 N.Y.S.2d 9 (1st Dept. 2005) ["equitable estoppel does not apply where the misrepresentation or act of concealment underlying the estoppel claim is the same act which forms the basis of plaintiff's underlying substantive case of action"]; Kaufman v. Cohen, 307 A.D.2d 113, 122, 760 N.Y.S.2d 157 (1st Dept. 2003). Therefore, Greschner's supposed willful breach of contract cannot serve as the factual predicate for an equitable estoppel claim.

Moreover, to take advantage of equitable estoppel, the plaintiff's complaint must sufficiently plead facts which bring the plaintiff "within the shelter of the rule". Simcuski v. Saeli, 44 N.Y.2d 442, 449 (1978). Analysis of the complaint [A 31-40] makes it manifest that the pleading makes no reference to facts which even remotely suggest the application of the doctrine. Alt's action should be dismissed, in its entirety, on the grounds of untimeliness.

## POINT V

## ALT HAS NO EVIDENCE IN SUPPORT OF HER CLAIM

The affidavits in support of the motion, together with the documentary evidence, establish the following as uncontested:

a. Ron Greschner Enterprises, Ltd. [RGE], a Canadian Company, made an investment in the WaterGroup Company.

b. RGE sold its interest in the WaterGroup Company in September, 1997, through a contract of sale [Exh. 2 to Fettes Affidavit] in which it received 56,040 shares in USF.

c. Pursuant to the Contract of Sale, Ron Greschner Enterprises was required to contribute 5,604 shares into Escrow [Fettes Aff. Exh. 2 at 709, §2.5(a)(6)].

d. After the contribution to Escrow, Ron Greschner Enterprises received 50,436 shares of USF [Fettes Aff., ¶9, Fettes Exh. 5].

e. Pursuant to certain option Agreements [See Fettes Aff., ¶¶8-11; Fettes Exh. 7], Ron Greschner Enterprises contributed 4,723 shares to Optionees.

f. When the Escrow (5,604) and Option Shares (4,723) are subtracted from the 56,040 share purchase price, Ron Greschner Enterprises received 45,713 shares of USF.

g. On April 23, 1999, Greschner deposited 45,713 shares in an account with J.B. Hanauer [Exh. J].

    h.    Those 45,713 were sold, and converted into cash, on June 9, 1999 [Exh. K and Sisti Aff.].

    i.    Greschner here provides, for the Court, an excel spreadsheet (revised for the correct amount of Option Shares)[Exh. N], which accounts for the precise value of (1) the shares, in American dollars, on the date of sale, (2) the initial investment, in American dollars, and (3) the taxes and accounting fees paid by Ron Greschner Enterprises, together with the reference to each bate-numbered page that is in the defendant's exhibits as marked for trial.

    k.    That spreadsheet more than establishes that the "profit" realized from the WaterGroup investment, by Ron Greschner, is less than $800,000.

Plaintiff Alt simply has no evidence to the contrary, and the time for her attorney's hyperbolic– and tasteless–accusations has passed.   Plaintiff Alt cannot come forward with "evidence" that establishes her factual claim  Alt has no evidence of either the timeliness of her causes of action, or their merit.  For this reason,  summary judgment should be granted in favor of the defendant Greschner.

## Conclusion

On the basis of the foregoing, the defendant Ronald Greschner respectfully requests that his motion to reargue, and for the grant of summary judgment, be granted in all respects.

                                          Respectfully submitted,

                                          Ledy-Gurren Bass & Siff, LLP

                                          By: _____
                                          Nancy Ledy-Gurren (2186)
                                          Attorneys for Defendant
                                          RONALD J. GRESCHNER
                                          475 Park Avenue South
                                          New York, New York 10016
                                          (212) 447-1111

Dated:      December 10, 2007
              New York, New York