# EXHIBIT 4

## RESTATED AND AMENDING OPTION AGREEMENT

THIS OPTION AGREEMENT made as of the 29th day of September, 1997

BETWEEN:

INDUSTRIA CAPITAL INC. a body corporate duly incorporated under the laws of the Province of Saskatchewan, with head office at the City of Regina, in the Province of Saskatchewan,

(hereinafter called the "Optionor")

OF THE FIRST PART

AND:

JOSEPH F. MORRISON, of the City of Regina, in the Province of Saskatchewan

(hereinafter called the "Optionee")

OF THE SECOND PART

### PREAMBLE

WHEREAS the Optionor and the Optionee entered into an Option Agreement made as of the 15th day of November, 1990 (the "Option Agreement");

AND WHEREAS the Option Agreement provided for a grant of an option in 453 Common Shares in the capital stock of 3426 Investments Ltd. (presently WG Capital Inc.);

AND WHEREAS it is proposed that WG Capital Inc. amalgamate with WaterGroup Companies Inc. into WaterGroup Companies Inc.;

AND WHEREAS pursuant to a Share Purchase Agreement dated September 30, 1997 amongst Arva Investments Ltd., Industria Capital Inc., Ron Greschner Enterprises Inc., Will Slobodian, Dwight G. Auramenko, Norm Reise, U.S. Filter/Canada Inc. and United States Filter

**EXHIBIT 4**

GRESCHNER 992

- 2 -

Corporation, the Optionor intends to sell its shares in capital stock of WaterGroup Companies Inc. (the "Share Purchase Agreement");

AND WHEREAS the Optionor and Optionee agree that the Option Shares, as defined under the Option Agreement, shall be substituted with USF Common Stock and Retractable Shares, as defined in the Share Purchase Agreement to be received on closing pursuant to the Share Purchase Agreement;

AND WHEREAS the Optionor and the Optionee agree that the Option Agreement shall be restated and amended.

NOW THEREFORE in consideration of the premises, the parties hereto agree as follows:

## ARTICLE I
## INTERPRETATION

1.01    Definitions

In this Agreement, unless the subject matter or context requires otherwise:

(a)    "Corporation" means WG Capital Inc.;

(b)    "Option Period" means:

(i)    in the case of the USF Common Stock, the period between 1:00 o'clock a.m., March 1, 1998 and 12:00 o'clock p.m., April 15, 1998; and

(ii)   in the case of the Escrow Shares means the sixty (60) calendar days immediately following the date the Escrow Shares are released from escrow pursuant to the Share Purchase Agreement and the Escrow Agreement;

(c)    "Option Shares" means the following:

(i)    10,742 USF Common Stock, as defined in the Share Purchase Agreement of the Optionor to be received upon closing under the Share Purchase Agreement (the "USF Common Stock"); and

GRESCHNER 993

- 3 -

    (ii)    7.9% of the Escrow Shares, of the Optionor, as defined under the Share Purchase Agreement, which are released to the Optionor pursuant to the terms of the Share Purchase Agreement and the Escrow Agreement ("Escrow Agreement") as defined under the Share Purchase Agreement ("Escrow Shares");

(d)   "Purchase Price" means the Purchase Price for the Option Shares as determined in accordance with Article III hereof.

1.02    Interpretation of Agreement

The following rules shall be applied in interpreting this Agreement:

(a)    this Agreement shall enure to the benefit of and be binding upon the parties hereto and their successors and permitted assigns;

(b)    this Agreement and all matters arising hereunder shall be governed by the laws of Saskatchewan and the laws of Canada applicable therein and all disputes arising under this Agreement shall be referred to the courts of competent jurisdiction of Saskatchewan.

## ARTICLE II
## GRANT OF OPTION

2.01    In consideration of the sum of Ten Dollars ($10.00) now paid by the Optionee to the Optionor (the receipt of which is hereby acknowledged by the Optionor), the Optionor hereby grants to the Optionee the exclusive option, irrevocable within the Option Period, to purchase the Option Shares from the Optionor.

## ARTICLE III
## PURCHASE PRICE

$15.18 [initialed] JFM

3.01    The Purchase Price payable for the Option Shares shall be $~~15.77~~ for each of the Option Shares.

- 4 -

## ARTICLE IV
## OPTION PERIOD

4.01  The option herein granted shall be open for acceptance within the Option Period. In the event the Optionee shall fail to exercise the option herein provided within the Option Period, the option herein granted shall immediately lapse and terminate without further notice and all interest of the Optionee in the Option Shares under this Option Agreement shall cease and determine.

## ARTICLE V
## EXERCISE OF OPTION

5.01  The option hereby granted may be exercised either in whole or in part, from time to time, at any time within the Option Period and only by notice in writing of the exercise thereof (hereinafter in this Article V referred to as the "Option Notice") personally served upon the Optionor within the Option Period, which Option Notice shall state that the Optionee is exercising the option granted under this Option Agreement and shall further state the number and type of Option Shares being purchased, and shall further state the date of the closing date ("Closing Date") with respect to those Option Shares the Optionee wishes to purchase at that time, which:

(a)  in the case of the USF Common Stock shall not be later than April 15, 1998; and

(b)  in the case of the Escrow Shares shall be not more than thirty (30) days immediately following the date of service of the Option Notice.

5.02  Upon the exercise of the option or any part thereof, herein granted in the manner as set forth in paragraph 5.01 above, the following shall be the terms of a binding agreement of purchase and sale of the Option Shares being purchased by the Optionee at that time between the Optionor and Optionee:

(a)  subject to payment of the Purchase Price for the Option Shares being purchased at that time, the Optionor shall be obligated to transfer to the Optionee the Option Shares at and for the Purchase Price as applicable in accordance with Article III hereof free and clear of all encumbrances;

- 5 -

(b) the closing ("Closing") of the purchase and sale of the Option Shares shall take place at the Corporation's offices at 10:00 a.m. on the Closing Date set forth in the Option Notice;

(c) at the applicable Closing, the Optionor shall deliver to the Optionee a Transfer in respect of the Option Shares being purchased and the Share Certificates representing the Option Shares being purchased;

(d) at the Closing, the Optionee shall deliver to the Optionor a certified cheque totalling the Purchase Price payable to the Optionor in exchange for the delivery of the Share Certificates representing the Option Shares being purchased.

## ARTICLE VI
## MISCELLANEOUS

6.01   Further Assurances

Each of the parties at their own expense, hereto upon the request of the other party, shall execute, acknowledge and deliver or cause to be done, executed, acknowledged or delivered all such further acts, deeds, documents, assignments, transfers, conveyances, powers of attorney, writings and assurances as may be reasonably necessary or desirable to more fully effect and complete the consummation of the transactions contemplated by this Agreement.

6.02   Notices

Except as otherwise provided in paragraph 5.01 hereof, any notice, direction or other instrument required or permitted to be given to the Optionor hereunder shall be in writing and may be given by delivering the same or sending the same by mail to the Optionor as follows:

TO:    Industria Capital Inc.
       1024 Winnipeg Street
       Regina, Saskatchewan
       S4R 8P8

Any notice, direction or other instrument required or permitted to be given to the Optionee hereunder shall be in writing and may be given by delivering the same to the Optionee, as applicable, as follows:

GRESCHNER 996

TO:          Joseph F. Morrison
             3742 Wetmore Crescent
             Regina, Saskatchewan
             S4V 2B6

or at such other address as any party may from time to time notify in writing. Any such notice, if delivered by hand, shall be deemed to have been given on the date on which it was delivered; and if delivered by mail, five (5) business days following the date of posting; provided that if there shall be between the time of mailing and the actual receipt of such notice a mail strike, slowdown or other labour dispute, then such notice shall be effective only if actually delivered.

6.03     Time of the Essence

Time shall be of the essence of this Agreement.

6.04     Severability

In the event any provision of this Option Agreement is deemed to be invalid or void in whole or in part by any Court of Competent Jurisdiction, the remaining terms and provisions of this Option Agreement shall remain in full force and effect.

6.05     Counterparts

This Agreement may be executed in counterparts, each of which shall be deemed to be an original and all of which together shall constitute one and the same agreement.

IN WITNESS WHEREOF, this Agreement has been executed by the parties as of the day and year first above written.

INDUSTRIA CAPITAL INC.

Per _____

SIGNED, SEALED AND DELIVERED   )
in the presence of:            )
                               )  _____
_____        )  JOSEPH F. MORRISON
WITNESS                        )

GRESCHNER 997